[L. A. No. 5832. In Bank.—June 15, 1921.]

NATIONAL BANK OF CALIFORNIA AT LOS ANGELES (a Corporation), Respondent, v. EXCHANGE NATIONAL BANK OF LONG BEACH (a Corporation), Appellant.

[1] TRUST—ASSIGNMENT OF WARRANT AND ASSESSMENT FOR PUBLIC WORK—APPLICATION OF PROCEEDS—PAYMENT OF GUARANTEED NOTE.—Where a contractor assigned and delivered to a bank his warrant and assessment for public work with written instructions authorizing the bank to collect the amounts due and to receive and sell bonds for the unpaid assessments, and directing the payment from the amounts collected of a promissory note of which the contractor was a guarantor, a trust was created in favor of the holder of the note.

[2] ID.—BENEFIT OF TRUST—CONSTRUCTION OF LETTER BETWEEN COUNSEL—ABSENCE OF ESTOPPEL.—Under such an assignment, the holder of the note was not estopped from claiming the benefit of the trust by a letter from its attorney to the attorney for the maker of the note expressing dissatisfaction with the arrangement and requesting immediate payment, although the maker informed the

guarantor, and the latter instructed the bank not to pay the claim without further order, since such letter was not intended for general publication but for the benefit of the clients of the attorney.

[3] ID.—COMMENCEMENT OF ACTION AGAINST MAKER AND GUARANTOR OF NOTE—NONELECTION TO TAKE UNDER TRUST.—Where a trust was created between the guarantor of a promissory note and a bank providing for the payment from a fund to be realized by the bank from the collection of assessments due the guarantor, the commencement of a suit by the holder of the note against the maker and guarantor was not an election not to take under the trust.

[4] ASSIGNMENT—WARRANT AND ASSESSMENT FOR PUBLIC WORK—COLLECTION AND DISPOSITION OF PROCEEDS—NATURE OF INSTRUMENT.—Where a warrant and assessment for public work was assigned by the contractor to a bank with instructions to collect the assessments and to apply the proceeds to the payments of claims against the assignor, the assignment was more than one for collection and the assignor had not the power to recall the instrument at any time before it was collected.

[5] TRUST—CREATION IN FAVOR OF THIRD PERSON—CODE PROVISIONS APPLICABLE.—A trust created by the guarantor of a promissory note in favor of the holder by the assignment and delivery of a warrant and assessment for public work to a bank, with instructions to collect the assessments and apply the proceeds to the payment of the note, is governed by the provisions of the code with reference to trusts, and not by section 1559 of the Civil Code, providing that a contract made expressly by a third person may be enforced by him at any time before the parties thereto rescind it.

[6] ID.—ASSIGNMENT OF WARRANT AND ASSESSMENT—COLLECTION AND APPLICATION OF PROCEEDS—ACCEPTANCE BY ASSIGNEE—CONSIDERATION UNNECESSARY.—Where a warrant and assessment for public work was assigned to a bank with instructions to collect and apply the proceeds to the payment of debts of the contractor, no consideration was necessary on the part of the bank in the acceptance of the trust.

[7] ID.—WRITTEN DECLARATION OF TRUST—REFORMATION FOR MISTAKE—PLEADING—INSUFFICIENT COMPLAINT.—Where an assignment of a warrant and assessment for public work was accompanied by instructions in writing which created a trust in favor of the creditors of the assignor, an allegation in a pleading to reform the instructions on the ground of mutual mistake by the addition of an alleged oral agreement was insufficient, where the facts showing how the mistake was made were not alleged, nor that the parties intended to incorporate the agreement in the writing, but merely that by inadvertence such agreement was omitted.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Eugene C. Campbell and George E. Cryer for Appellant.

Harry C. Biby and John E. Biby for Respondent.

WILBUR, J.—Plaintiff recovered judgment in the lower court for the sum of $2,604.44. Defendant appeals. Previous to December 10, 1914, K. T. Bennett had performed a contract for the installation of electric lights along American Avenue, in the city of Long Beach, for which there had been issued to F. B. Amend, his assignee, by the board of public works of the city of Long Beach, assessment No. 167, whereunder F. B. Amend was entitled to collect assessments aggregating $11,821.99 levied upon the property fronting upon said street, or in case of nonpayment thereof to have issued bonds for the unpaid assessments. On December 10, 1914, K. T. Bennett and his attorney and assignee, F. B. Amend, assigned and delivered the warrant and assessment to the defendant for collection, with written instructions for the disposition of the proceeds. These instructions authorized the defendant to collect the amounts due and to receive and sell bonds issued for the unpaid assessments. It was directed that the money received from the sale of such bonds should be deposited with the defendant in the name of K. T. Bennett and the same should be "subject to the instructions hereinafter given." These instructions authorized the payment of a large number of labor and materialmen claims incurred in the performance of the work and specifically detailed in the instructions. The labor claims in the instructions were to be first paid and thereafter any other labor claims which were so subsequently authorized by the assignors were to be paid, and it was then provided: "Eighth: After you have either paid or received sufficient money to pay all of the aforesaid claims (the same being labor claims), you are then instructed to pay, upon receiving proper receipts therefor, the following amounts to the following parties, to wit." Then follows a list of claims, the sixteenth being the following item, which is the subject of this litiga-

tion: "National Bank of California . . . $2000, interest $———." The ninth item of the instructions refers to certain disputed claims, and the tenth was as follows: "Tenth. Upon matters of law concerning the collection of said assessments, the making of demands therefor, the issuance of bonds, etc., you will please follow the advice and instructions of Messrs. Amend & Amend, and they will furnish you opinions in writing should you desire the same; they are also to act as counsel should any action be necessary in said collection."

The defendant accepted the instructions and indorsed such acceptance thereon at the time of delivery. At the time the instructions were given the plaintiff held a promissory note of the Western Construction Company for two thousand dollars, dated May 6, 1914, bearing seven per cent interest, payable and to be compounded monthly, and also a certain written guaranty dated April 22, 1914, signed by James Irvine, K. T. Bennett and E. Irvine, whereby said guarantors within the limits of three thousand dollars guaranteed the prompt payment of any indebtedness due to the bank by the Western Construction Company. It was this obligation of Bennett as guarantor which was intended by Bennett to be covered by the instructions to pay plaintiff two thousand dollars.

December 11, 1914, plaintiff wrote to defendant, stating that it was informed of the transfer "and that Mr. Bennett has authorized you to pay this bank the amount of a note of two thousand dollars executed by the Western Construction Company and others" and asking for a confirmation, "stating that you have accepted the above-mentioned order from Mr. Bennett to the effect that on receipt of proceeds from the warrant you would pay to us the above amount, two thousand dollars and interest at seven per cent from August 5, 1914." On December 12th the defendant replied, acknowledging the receipt of the communication, and stating, "We have accepted the escrow and are receiving payments by the lot owners covering this work. Our instructions from the assignors are that we must pay the labor claims first, then the material claims, and in the list of material claims is one of two thousand dollars in your favor. This matter will receive prompt attention." On December 14th plaintiff requested information as to the amount to be collected on American Avenue and the total amount of claim, stating, "We of course cannot expect you to give us a prom-

ise regarding the payment of our claim, but would like to know whether or not there will be sufficient money coming in to take care of same, and the time payment could be expected.'' On December 15th defendant replied, stating that the total warrant was $11,821.99, but the amount of cash to be received could not be ascertained, but the total claims for labor and material amounted to $11,741.09. On December 19th Mr. Hyman Schwartz, attorney for the Western Construction Company and for James Irvine, wrote to the plaintiff, informing it of the above-mentioned assignment by K. T. Bennett, and on December 24th Mr. Trippet, attorney for the plaintiff, replied, stating, ''The arrangement that has been made to take care of this claim is not satisfactory to the bank, and I am instructed to request immediate payment.'' Mr. Schwartz at once showed this letter to Mr. Amend, who upon December 31st informed the cashier of the defendant bank that plaintiff was dissatisfied with the arrangement made for the payment of its claim, and on January 2d gave the defendant written instructions not to pay said claim without a further order to that effect from himself. The defendant believed the statement made by Mr. Amend and relied upon the same in withholding payment from the plaintiff and in paying out the money on the attachment hereinafter mentioned.

On December 23, 1914, Mr. Trippet had been instructed to bring suit against the Western Construction Company and the guarantors, James Irvine and K. T. Bennett, which was done December 30, 1914, and judgment upon said note and guaranty was obtained. Suit was also brought against the stockholders of the Western Construction Company to recover said amount.

On January 18, 1915, one R. S. Shotwell attached the interest of K. T. Bennett in the proceeds of said warrant in the possession of defendant and on January 22, 1915, obtained a judgment of three thousand three hundred dollars in the attachment suit, and levied the execution upon the interest of K. T. Bennett in and to the proceeds of said warrant, which at that time amounted to the sum of two thousand seven hundred dollars, which amount was paid by the defendant to the sheriff on account of said levy. On February 1, 1915, in an action by a creditor of K. T. Bennett and James Irvine, the balance of the money in the hands

of the defendant, amounting to $164.08, was ordered by the court to be paid to the receiver in that action. The defendant also paid the claim of one thousand dollars to John Roebling Sons Company, which, under the terms of the escrow agreement, was to be paid subsequent to the claim of the plaintiff. Basing its claim upon the proposition that the payments to Roebling Sons Company and to the sheriff upon execution were in violation of the instructions and amounted to a diversion of moneys payable to the plaintiff, it instituted suit and obtained the judgment appealed from.

One of the main questions in the case is whether or not the plaintiff repudiated the benefit of the agreement made on its behalf by the defendant and K. T. Bennett and F. B. Amend. The trial court found that F. B. Amend at the time he made the foregoing statements to the defendant concerning plaintiff had no authority from the plaintiff to act on its behalf for any purpose or in any manner whatsoever, and that such statement and notice were given without the knowledge or consent of the plaintiff.

It should be observed that the only communications passing directly between the plaintiff and the defendant are those hereinabove set forth, in which the defendant stated its purpose to carry out the instructions given it by Bennett for the payment of the plaintiff's claim. If the communications from Trippet to Schwartz had been made by the plaintiff to the defendant perhaps it might be considered a repudiation of the arrangement made in plaintiff's favor and a consequent release of the defendant from the obligation it incurred by accepting the assignment and instructions from Bennett, but the evidence is and the court has found that such letter was not intended to be communicated to the defendant bank, and the case must be determined in the light of this finding.

[1] There can be no doubt that the original transaction created a trust in favor of the plaintiff bank. Section 2251 of our Civil Code provides as follows: "The mutual consent of a trustor and trustee creates a trust of which the beneficiary may take advantage at any time prior to its rescission." Section 2258 of the Civil Code provides as follows: "A trustee must fulfill the purpose of the trust, as declared at its creation, and must follow all the directions of the trustor given at that time, except as modified by the consent of all

parties interested, in the same manner, and to the same extent, as an employee." (See, also, Civ. Code, secs. 2215, 2221 and 2222.) It is further provided in section 2280 that "a trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued." The general rule is thus stated in Am. & Eng. Ency.: "Where property is transferred and accepted on the agreement and understanding that it or its proceeds are to be applied for certain designated purposes, an express trust is created complete upon the trustee's acceptance thereof, and the application of the property as directed enters into the consideration of the transfer." (28 Am. & Eng. Ency. of Law, 2d ed., p. 904.)

We will now pass to a consideration of some of the specific points made by the appellant.

[2] First: Plaintiff is estopped to maintain the action. It is claimed "that the plaintiff's attorney published the statement to the effect that plaintiff repudiated the escrow instructions." This contention is based upon the facts hereinbefore stated with relation to the communication from Trippet to Schwartz. The ordinary rule with reference to estoppel is thus stated by Bigelow in his work on Estoppel, sixth edition, pages 708, 709: "Only the person to whom the representation was made or for whom it was designed can act upon and avail himself of it. . . . A person who receives statements at second hand, not intended for him, clearly has no right to act upon them. . . . If, however, the declaration was intended to be general, then it seems that one who did not hear it, but to whom it was made known directly afterward, or within the time to be allowed for acting upon it, may act upon it." The obligation to the defendant bank was not only an obligation of K. T. Bennett but of his two joint guarantors, of the Western Construction Company, and of its stockholders as well. It is apparent that the Western Construction Company and James Irvine, who were being pressed for payment, sought through their attorney to secure delay by calling attention to the escrow agreement made by Bennett in favor of the plaintiff corporation. This escrow agreement involved the actual delay incident to collection of street as-

sessments and in addition such delay as might result from the issuance and sale of the bonds for the purpose of securing a fund. The obligation due the plaintiff was a promissory note executed May 6, 1914, due one day after date. Plaintiff's expression of dissatisfaction must be construed in the light of this additional delay, proposed not by K. T. Bennett but by his associates represented by Mr. Schwartz. The letter to Mr. Schwartz was not intended for general publication. It was a communication between attorneys occupying confidential relations toward their respective clients, and intended for the benefit of the clients of Mr. Schwartz. The case of *Mitchell* v. *Reed,* 9 Cal. 204, [70 Am. Dec. 647], is cited by the appellant as authority for the proposition that the plaintiff is estopped in this case. In the case of *Ghio* v. *Cline* (Cal. App.), 187 Pac. 433, the district court of appeal, first appellate district, division two, correctly stated that, "Though this case has not been directly reversed or modified by the supreme court, there can be no doubt that it it is contrary to the great weight of authority upon the doctrine of estoppel." It is sufficient, however, to point out here that the facts do not bring it within the rule quoted from Bigelow or stated in *Mitchell* v. *Reed, supra.* In the case at bar the representation relied upon by the defendant was not made to the public generally or to any individual as a member of the public, but to an attorney who was apparently seeking delay in contemplated litigation for the purpose of informing that attorney that such delay would not be granted, and not for the purpose of influencing the conduct of the defendant in connection with the trust which it had already informed plaintiff it had accepted and would carry out. The instructions of Mr. Amend to the defendant bank in his letter of January 2d, and also by the indorsement upon the escrow instructions to "hold" this item, do not indicate that he understood that the plaintiff had wholly repudiated the arrangement in its behalf, but rather that he expected to negotiate further with plaintiff with reference thereto. Apparently this situation was overlooked when attachments were levied and ordered paid by Mr. Amend, attorney for K. T. Bennett. The defendant neglected to inform the plaintiff of the existence of such an attachment. Plaintiff was not estopped from claiming the benefit of the trust, and for the

same reason it cannot be said to have waived the benefit of the escrow instructions on its behalf.

[3] Appellant claims that the commencement of the suit against the Western Construction Company, its stockholders and guarantors was an election by plaintiff not to take under the trust. The answer to that contention is that there is no inconsistency between such action and a reliance upon the benefit of the escrow instructions.

[4] Appellant claims that the assignment of the warrant and assessment to the bank was for collection only, and that the assignor had control of the paper until it was collected and hence retained the power to recall the instrument at any time before it was collected. The difficulty with this contention is that in addition to the assignment for collection, instructions were given with relation to the use of the proceeds which put the fund collected beyond Bennett's control. This is equally true whether the escrow instructions provided for the deposit of the money in the name of Bennett or in the name of the several creditors to whom the money was to be paid. In either event the ultimate recipient of the money was designated in the escrow agreement, and the money belonged to such recipient when collected whether deposited in the name of K. T. Bennett or not, for Bennett had given defendant instructions to pay out said money and said instructions had been accepted in writing by the defendant.

[5] Section 1559 of the Civil Code, providing that a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it, has no application to this case where a trust has been created in favor of such third person. Such trust is governed by the provisions of the code with reference to trusts.

[6] No consideration was necessary for the agreement of the defendant. (Civ. Code, sec. 1040; *Kopp* v. *Gunther,* 95 Cal. 63, [30 Pac. 301]; *Taber* v. *Bailey,* 22 Cal. App. 617, [135 Pac. 975].)

The various assignments of error with relation to the introduction of evidence do not affect the result and do not require separate discussion.

Appellant contends that the court erred in overruling defendant's demurrer to the third amended complaint. In view of the answer and trial upon the merits it is unneces-

sary to consider the special demurrer. The rights of the parties were fully litigated under the pleadings. The evidence of the acceptance of the trust by the defendant and by the plaintiff, of the receipt of the money by defendant, and of the nonpayment of the plaintiff's claim was fully presented to the court, so that a technical error, if any, in the statement of the causes of action in the complaint would not justify the reversal of the case (Const., art. VI, sec. 4½).

[7] A more serious question arises from the attempt of the defendant to secure a reformation of the escrow instructions on the ground of mutual mistake. A cross-complaint for that purpose was interposed wherein it was alleged that, in addition to the terms contained in the written instructions, it was agreed between the defendant and K. T. Bennett and F. B. Amend that all moneys collected should be held subject to the order of K. T. Bennett and F. B. Amend, and that Bennett and Amend reserved the right to alter the instructions at their pleasure in relation to the disposition of the money so collected for the creditors named in said instructions, except as to creditors named in paragraph 5 thereof; that it was agreed that they could add other creditors to the list or could strike out any of said creditors, and that all said moneys should be subject to the control and order of Amend and Bennett and could be paid out at their order.

It was further alleged "that by inadvertence and the mutual mistake of the defendant and said Amend and Bennett, the aforesaid additional terms were omitted from said writing; and that said K. T. Bennett and said F. B. Amend are necessary parties to this amended cross-complaint, and their presence is essential to the complete determination of the controversy between the parties herein named." A demurrer to this cross-complaint was sustained.

Section 2254 of the Civil Code provides: "All declarations of a trustor to his trustees, in relation to the trust, before its acceptance by the trustees, or any of them, are to be deemed part of the declaration of the trust, except that when a declaration of trust is made in writing, all previous declarations by the same trustor are merged therein." The fact that additional instructions were given or agreed upon orally would be immaterial unless it was also agreed that such instructions should be incorporated in the written declarations of trust. The above allegation that by inadver-

tence and mutual mistake such agreement was omitted from the written declaration of trust is insufficient to show such a mistake as would justify a reformation of the instrument. It was necessary to allege the facts showing how the mistake was made (34 Cyc. 974). It is not even alleged that the parties intended to incorporate the agreement in the writing.

The beneficiary is entitled to rely upon the rules of evidence which limit the proof of the terms of the trust to written declarations thereof. The demurrer to the cross-complaint was properly sustained.

Appellant claims that the judgment should not have included compound interest at seven per cent, which was in accord with the original obligation. It is apparent from the escrow instructions that interest was to be paid upon the two thousand dollars due the plaintiff. While the amount of this interest was not specified, appellant was advised by the correspondence between plaintiff and defendant that the indebtedness covered by the escrow instructions was two thousand dollars and interest at seven per cent from August 5, 1914. It was undoubtedly the intention of Bennett and of the defendant that the amount of the note and interest thereon should be paid from the proceeds of the assessment and warrant, and the judgment was in accordance with that agreement.

Judgment affirmed.

Lennon, J., Sloane, J., Shaw, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices, except Wilbur, J., and Lennon, J., concurred.