LOIS J. NEWMAN (FORMERLY LOIS J. SENDERMAN), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29650.    Promulgated January 22, 1953.

*Samuel Taylor, Esq.*, and *Walter G. Schwartz, Esq.*, for the petitioner.

*Edward H. Boyle, Esq.*, for the respondent.

**OPINION.**

VAN FOSSAN, *Judge:* The parties to this proceeding involving gift taxes for 1946 agree that the transfer by petitioner of the property in controversy for the benefit of her minor daughter constituted a taxable gift within the purview of sections 1000 (a) and 1002 of the Internal Revenue Code.[1] They disagree as to the year, 1943 or 1946, in which the gift was completed. Respondent has determined that the taxable transfer took place in 1946. The pertinent facts are set forth above.

---

[1] SEC. 1000. IMPOSITION OF TAX.

(a) For the calendar year 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. * * *

SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift and shall be included in computing the amount of gifts made during the calendar year.

It is respondent's contention that the 1943 trust is not expressly made irrevocable by the declaration of trust instrument creating it, and that, having been so created subsequent to 1931, the trust was revocable under section 2280 of the Civil Code of California, as amended in 1931.[2]  He argues, therefore, that the transfer of the trust corpus to the guardian of the estate of petitioner's minor daughter on May 2, 1946, constituted a completed gift by the petitioner-donor at that time.  Respondent makes no claim in the instant litigation that the income of the trust from its creation in 1943 until its termination in 1946 was taxable to petitioner under either section 22 (a) or 166 of the Code.  Citing and relying upon our opinion in *Erik Krag*, 8 T. C. 1091, as controlling, respondent argues on brief that the decree of the local court amounted only to a consent decree; that, moreover, being made after the trust terminated, it was a moot decree; and that, therefore, we are not bound to give any effect to it whatsoever.

Petitioner, on the other hand, maintains that not only does the trust instrument in controversy meet the requirements of section 2280, *supra*, as respects its irrevocability but also that the oral trust earlier created was intended to be, and was, irrevocable, and that both trusts remained in existence from the time they were created until they were both terminated in 1946.  To support this position, petitioner points to the July 10, 1947, decree of the Superior Court in and for the city and county of San Francisco so construing the trusts. Petitioner cites such cases as *Susan B. Armstrong*, 38 B. T. A. 658; *Estate of Cyrus M. Beachy*, 15 T. C. 136; *Blair* v. *Commissioner*, 300 U. S. 5, and others of similar import for the proposition that the State court's decree is dispositive of the issue before us and that we are bound to give effect thereto.

The question here in issue turns upon a proper construction of the trusts created by petitioner in 1943.  Whether either or both trusts were revocable or "expressly made irrevocable" involves an interpretation of the law of California in which state such trusts were created and administered.  The decree of the state court, relied upon by petitioner, involving, as it does, the same subject matter and purporting to construe the property laws of California with regard thereto, is conclusive of the issue here presented if the court decree represented an independent judgment in a real controversy between the parties and was not merely a consent decree entered *pro forma* in a friendly suit.  On the facts here present we cannot catalogue the instant proceeding for instruction as a real and bona fide controversy.

[2] SEC. 2280. [Revocation of trusts.]  Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee.  When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate.  *  *  *

There was no controversy between the parties and no independent judgment was rendered. *Estate of Ralph Rainger*, 12 T. C. 483, affd. (C. A. 9), 183 F. 2d 587; certiorari denied 341 U. S. 904; *Saulsbury* v. *United States* (C. A. 5), 199 F. 2d 578.

The facts in this case are so strikingly parallel to those in *Erik Krag*, *supra*, and *Gaylord* v. *Commissioner* (C. A. 9), 153 F. 2d 408, affirming 3 T. C. 281, and the holding of those cases is so clearly applicable that we need go little further than to cite these controlling authorities. Every question that could be raised, and every contention that is here advanced, is answered therein. Any distinction between those cases and that here before us is in form and not in substance.

There can be no question that the written agreement, as drafted and as in effect in the years 1943 through 1946, was not *"expressly* made irrevocable by the instrument creating the trust" [emphasis supplied], and under the cases cited must be deemed revocable by the donor under the statute. Nor was the attempt to have the trust construed as irrevocable, as appears in the order of the court of July 24, 1947, effective for tax purposes. *Gaylord* v. *Commissioner*, *supra.* It could not, by a process of retroactivity, defeat the incidence of the Federal tax laws. Here, as in the *Gaylord* case, it cannot be said that "the gift tax returns with their references to irrevocability had the effect of amending the trust declaration."  ·

Whatever the parties may have had in mind, we are more impressed by what they did in furtherance of their intention, or, more accurately, what they did not do.

The existence of the oral trust was not mentioned in the written instrument, albeit petitioner now contends it was in full force and effect for 6 or 7 months. When the written trust was being prepared, two lawyers, one of them the trustee under the trust, the other his associate and successor as advisor to the trust, both experienced and fully cognizant of the desires of the donor, participated in the drafting of the instrument. Despite the fact, if it be a fact, that both lawyers understood that petitioner wished an irrevocable trust, no reference was made to an existing irrevocable oral trust nor was the word "irrevocable", or any word to the same effect, used or incorporated specifically, or by interpretation or by proper inference, in the writing. Again, difficult to comprehend, is the fact that the oral trust on which petitioner now so heavily leans was not mentioned in the petition filed in April 1946 for appointment of a successor trustee, nor in the petition for appointment of a guardian, nor in the order appointing the guardian, nor yet again, in the original petition by guardian for instructions. All of these documents refer to a written trust and in one of them the statement is made that through error and inad-

vertence the express mention of irrevocability was omitted from the written declaration of trust.

It was not until June 23, 1947, and after the revenue agent had questioned the character of the trust, that we find mention of the oral trust.

Confronted with these facts, petitioner falls back on the oral trust, contending that at the time it was declared it was expressly made irrevocable and that it remained in existence even after the execution of the written trust. Petitioner points to testimony of petitioner and her lawyer attesting to such fact. Here we would simply quote the old saying, "Actions speak louder than words." The inconsistencies in the evidence, the presence of contradicting documents, and the inferences to be drawn from the whole record lead us reluctantly to the conclusion that the spoken word must yield to the documented conclusion that no irrevocable oral or written trust existed. Moreover, if anything additional need be called to attention to fortify the conclusion as to the oral trust, such trust was rendered wholly void and was effectively wiped out by the back dating of the written trust to January 1, 1943. Certainly, there cannot coexist two such trusts employing the same corpus.

Where, as here, the issue presented on the evidence raises a question of credibility of testimony, the Court is obliged to weigh the evidence carefully, determine the probabilities of accuracy, and accept or discount the evidence by consideration of the interests of the parties, and thus, from the whole record, determine where lies the truth.

If the oral trust was intended to be irrevocable, why, when it was transmuted into the written trust, did the written trust fail to mention either the oral trust or the word "irrevocable"? We find it impossible to believe that Goldman, an experienced lawyer, presumptively familiar with the provisions of section 2280 of the California Code and cognizant of all the facts, would inadvertently omit from the declaration of trust the express provision called for by the statute. One sentence of five words would have sufficed to have removed all question as to the revocability of the trust. Nor can we blink the fact that the petition for instructions was not filed in the California Superior Court until 1947 when the revenue agent raised the question of revocability of the trust, with possible Federal tax consequences.

By changing the names of the parties and a few dates, the pattern in the instant case fits almost precisely into the situation existing in the *Krag* and *Gaylord* cases. On the authority of the *Krag* and *Gaylord* cases cited above, we sustain respondent's holding that the 1943 written trust, here under study, was a revocable trust; that whatever its form, the oral trust was superseded by the written trust; that the transfer of title occurred in 1946 when the written trust was ter-

minated and the trust property transferred to the guardian for the minor, and that petitioner should be taxed accordingly.

Having found that neither of the trusts created in 1943 was, under California law, irrevocable, and that accordingly no completed gift was consummated in that year, we turn now to consider the facts tax-wise of the May 2, 1946, transfer of trust assets to the guardianship estate of petitioner's minor daughter. Citing *Harris* v. *Commissioner*, 340 U. S. 106, petitioner argues that, since the transfer was pursuant to a court order, it does not represent a taxable gift.

The factual situation present in the *Harris* case is clearly distinguishable at critical and important points, and would appear to have no application here. That case involved a divorce proceeding and a property settlement agreement incident thereto. The settlement in question was clearly an arm's length transaction. The element of donative intent was absent. Nor was a promise or an agreement an operative factor. The transfer was made dependent upon and pursuant to a decree of a court charged under state law with decreeing a just and equitable disposition of the community and separate property of the parties before it. Nevada Compiled Laws, section 9463.

Although she failed legally to effectuate a valid gift for tax purposes, since, as we have seen, it was done by a trust revocable under California law, she, nevertheless, harbored the same donative intent at all times here material. Moreover, the role of the state court here was not that of arbiter between two contesting parties. The terms of the trust instrument itself provided for the termination of the trust and the transfer of the corpus thereof to a guardian. As is customary in the cases involving property rights of a minor, application was made to a court of competent jurisdiction for authorization so to transfer the trust assets and for appointment of a guardian to receive and hold the same. The court's function was merely to see that the transfer was in accord with the trust instrument and to appoint a fit guardian. It exercised discretion only with respect to the latter.

But, contends petitioner, the doctrine of the *Harris* case is not to be limited and must apply whenever a transfer of property is made pursuant to a court decree. With this contention, we must disagree. Such broad application would have the effect of repealing by judicial process the gift tax statute and would make possible avoidance of a gift tax by the simple expedient of making any gift contingent upon a consent decree of a local court. We cannot believe that the Supreme Court intended or contemplated any such result. Rather, we feel that the drastic consequences "* * * of such a broad application of the *Harris* case * * * require the strictest limitation of that case

to its actual facts." See Taylor and Schwartz, "Tax Aspects of Marital Property Agreements," 7 Tax Law Review 9, 49 (November 1951) and the rationale contained therein.

The final issue is whether the gift which we have held was effected on May 2, 1946, included the item described in respondent's notice of deficiency "Overpayment of income tax and accrued interest for the years 1943–1945" in the amount of $64,035.05.

Respondent contends that since no valid gift was consummated in 1943, the corpus and the earnings thereon from 1943 to May 2, 1946, constituted the property of petitioner; that it was a mistake and error for the beneficiary to pay income tax on such earnings for 1943 and 1944 and for the trust so to do for 1945; that having mistakenly and erroneously paid such tax, the trust and/or the beneficiary were entitled, as of May 2, 1946, to a return or refund of the taxes so paid, together with interest; that such right amounted, in effect, to a claim for refund, an account receivable, or a chose in action; that this claim for refund, account receivable, or chose in action constituted a valuable property right, which, until May 2, 1946, remained the property of the trustor just as the amount of income taxes and interest would have remained the property of the trustor had no payment been made to the Commissioner and had they remained at all times a part of the trust corpus; and finally, that upon termination of the trust and transfer of the corpus to the guardian for the beneficiary, the property right, as part of the trust corpus, passed to the guardian beyond the control of the trustor and was part of the gift consummated at that time.

While respondent's argument might conceivably be of some weight if the income tax liability were here involved, we feel it to be misplaced and beside the point in the present posture of the parties and the issue involved. The very existence of the valuable property right which respondent says was transferred from petitioner to the guardianship estate has at all times material been in dispute and is presently being contested in another action pending before this Court. Therefore, such contingent property right cannot be said to be *in esse* prior to the time it is so held to be in that proceeding. Nor can it provide a basis for a determinative conclusion herein. Since the income tax liability is not at issue here, we have no alternative to holding as error, the inclusion of the controverted and contingent amount within the gift consummated May 2, 1946.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

JOHNSON and RAUM, *JJ.*, concur in the result.