ESTATE OF HENRY JAMES DAVIS, JOHN I. DAVIS, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5668–66. Filed December 11, 1968.

*Alvin R. Wohl,* for the petitioner.
*Harry M. Asch* and *Robert M. Zimmerman,* for the respondent.

WITHEY, *Judge:* Respondent has determined a deficiency in estate tax of petitioner in the amount of $17,785.36. Two questions are presented for our determination. First, whether decedent's community property share of the currency transferred by him to his son in 1961 is includable in his gross estate under either section 2037 or 2038 of the Internal Revenue Code of 1954; [1] and second, whether one-half of certain expenses claimed on decedent's estate tax return should be disallowed on the ground that 50 percent of those expenses represent the community obligations of the surviving spouse rather than the obligations of the decedent.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

On June 23, 1964, Henry James Davis (hereinafter referred to as decedent) died testate, being survived by his wife Leita E. Davis (hereinafter sometimes referred to as Leita) and his two sons, John I. Davis (hereinafter referred to as John) and William R. Davis. At the time of his death, decedent resided in Sacramento, Calif. Decedent's will, which had been executed on December 15, 1961, named his son John as executor of his estate. Decedent's will was admitted to probate in the Superior Court of California in and for the County of Sacramento (hereinafter referred to as the California Superior Court) and pursuant to letters testamentary granted by that court, John was appointed executor of decedent's estate. In that capacity, John signed a Federal estate tax return which was filed for decedent's estate on June 18, 1965, with the district director of internal revenue, San Francisco, Calif. At the time John filed the petition in this case, his legal residence was Sacramento, Calif.

Sometime between June 2 and 6, 1961, decedent gave John $109,000 in currency which was first counted and then sealed in an envelope. This currency was the community property of decedent and his wife. At the time of the physical transfer of this currency to John, decedent orally instructed him that he was to retain the funds in trust and to hold them for the benefit of Leita, to be used for her benefit after decedent's death. Decedent further instructed John that upon the death of Leita, the undisposed balance of the funds was to be disposed of by

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

John in accordance with Leita's directions. This oral transfer in trust [2] was never reduced to writing and John has held the property in trust since its creation. During decedent's lifetime, none of the funds were used, but subsequent to the death of decedent, John made expenditures for Leita from the trust funds pursuant to the instructions of decedent.

The transfer of the $109,000 to John occurred shortly after Leita suffered a stroke on Memorial Day, 1961. Decedent told John that Leita's stroke prompted him to transfer the currency to make certain there would be assets available for her needs following decedent's death. At the time of the oral transfer in trust, decedent was not in ill health.

An inventory and appraisement of decedent's estate was filed in the probate proceeding in the California Superior Court. All of the property which was included in the estate inventory was community property and was the subject of that probate proceeding. All the community property which was included in the probate proceeding was subjected to all of the deductions claimed and allowed in that proceeding. No part of the $109,000 transferred in trust to John was included in the inventory.

On January 18, 1965, John, as executor, filed a delinquent gift tax return for the calendar year 1961 with the district director of internal revenue, San Francisco, Calif. This gift tax return reported as a gift the oral transfer in trust of $54,500 in community property, which occurred in June of 1961. Then, on February 10, 1967, John, again in his capacity as executor, filed a claim for refund for the total gift tax and penalty of $2,475.31. The refund claim was filed to protect the estate's interest in the outcome of this case. No action has been taken on the claim for refund pending the disposition of this case. On February 1, 1965, a decree of final distribution was entered by the California Superior Court in the matter of decedent's estate.

John, as executor, reported the transfer of decedent's community property share of the $109,000, or $54,500, on Schedule G of decedent's estate tax return. However, that $54,500 was not included in the gross estate on the ground that it was a completed transfer made during the lifetime of the decedent.

On Schedule K of the estate tax return, entitled "Debts of Decedent and Mortgages and Liens," the following deductions were claimed:

| | |
|---|---|
| Miscellaneous debts | $95. 32 |
| Expense last illness | 595. 35 |
| Federal gift tax | 2, 475. 31 |
| State gift tax | 1, 172. 06 |
| Property taxes | 631. 64 |

On Schedule J of the estate tax return, entitled "Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims,"

[2] On brief, both parties treat this transaction as an oral trust and in fact so stipulate.

the following deductions were claimed: Funeral expenses $1,876.90, administration expenses $11,442.97. All amounts claimed in Schedules J and K of decedent's estate tax return represented the full amount of such listed expenses and the entire amount listed was claimed as a deduction against the gross estate.

In his deficiency notice, respondent increased the value of decedent's taxable estate by $54,500, representing decedent's community property interest in the currency transferred in trust. In addition, respondent disallowed one-half of all the deductions claimed under Schedules J and K, with the exception of Federal gift taxes claimed under Schedule K, on the ground that one-half of the claimed expenses was attributable to the community interest of decedent's surviving wife. Respondent further disallowed the entire deduction claimed for Federal gift tax on the ground that since no completed irrevocable gift was made by decedent, no gift tax liability arose.

OPINION

The first issue to be decided is whether decedent's community property share of the currency transferred by him to his son John under an oral trust is includable in his gross estate. Pursuant to section 2038 of the Code,[3] the value of decedent's gross estate included the value of all property which he had transferred in trust and over which trust he had the power to revoke at the time of his death. In determining the nature of the property rights surrounding the oral trust in question, specifically whether decedent had the power to revoke at the time of his death, the parties concede that we must look to State law, *Will Flitcroft*, 39 T.C. 52 (1962), reversed on other grounds 328 F. 2d 449 (C.A. 9, 1964); *Estate of Walter A. May*, 8 T.C. 1099 (1947), and in this regard, the parties further concede that the law of California controls. The only California statutory provision bearing on the revocability of voluntary trusts in section 2280 of the Civil Code of California, which was enacted in 1931 and provides that:

Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to

---

[3] SEC. 2038. REVOCABLE TRANSFERS.
  (a) IN GENERAL.—The value of the gross estate shall include the value of all property—
    (1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected hereby.[4]

Since the oral trust created by decedent was clearly a voluntary trust, Cal. Civ. Code secs. 2216 and 2221, it would appear that the issue presented could be decided under section 2280. However, petitioner contends that because that section, as amended in 1931, contains an exception clause employing the phrase "by the instrument creating the trust," section 2280 was intended to apply only to written trusts. Petitioner further contends that since there are no other California statutory provisions relating to the irrevocability of oral voluntary trusts, we must look to the common-law rule which it contends is to the effect that a trust is irrevocable absent an express reservation of the power to revoke. If petitioner's reasoning is correct, the transfer to decedent's son would have been completed and irrevocable in 1961 and therefore excludable from decedent's estate since the record fails to disclose that decedent expressly reserved the power to revoke the oral trust.

Respondent, on the other hand, first contends that section 2280 applies to the trust in question inasmuch as that section is the only statutory provision which sets forth the requirements for the revocability of voluntary trusts. However, respondent argues that the oral trust in question was revocable since under the statute an irrevocable trust can be created only by a written instrument. In the alternative, respondent contends that even if there can be an irrevocable oral trust under section 2280, the trust must have been "expressly made irrevocable" pursuant to the language of that section and since the facts in the instant case fail to show that decedent ever expressly manifested an intention to establish an irrevocable trust, the rule of revocability established by section 2280 must prevail.

In attempting to determine whether an irrevocable oral trust can be created pursuant to section 2280, we are confronted with a question of first impression. In order to resolve the issue in a manner consistent with the apparent intendment of the California legislature, we must consider all relevant information bearing on that section. Unfortunately, no committee reports of the California legislature are available. In their absence, we have attempted to trace the history of section 2280, as well as consider the relevant case law and comments bearing on that section.

As originally enacted in 1872, the statute reflected the common-law rule that a trust was irrevocable unless the trustor, by a "declaration

---

4 As originally enacted in 1872, the section read as follows:

A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly construed.

of trust," reserved a power of revocation. As amended in 1931, the statute reversed the presumption of irrevocability and provided that every voluntary trust was revocable unless expressly made irrevocable by the "instrument creating the trust." Considered in the strict definitional sense, a "declaration of trust," as used in the original statute, could be either written or oral, Bouvier's Law Dictionary (1914) ; Webster's Third New International Dictionary (1961), whereas the "instrument creating the trust," as used in the amended version, is limited to a written document, Bouvier's, *supra*. There appears to be no logical reason for the transposition from "declaration of trust" in the original code section to "instrument creating the trust" in the 1931 amendment. To the contrary, the only comment brought to our attention which attempts to explain the reason for enacting the 1931 amendment was prepared with the assistance of the legislator who introduced the amendment into the California legislature. That comment, appearing at 28 Calif. L. Rev. 202 (1940), indicates that the change from the common-law rule—

was apparently made for the reason that many trustors were not aware that they were creating irrevocable trusts and were unable to revoke them when their circumstances became such that they needed the trust corpus themselves. Also, in many cases the income from the trusts became inadequate to support the trustors, who found themselves precluded from reaching the trust corpus. These hardships on unsuspecting trustors became especially acute * * * by the economic upheavals of 1929 and 1930.

If the rationale suggested by the above writing is to be accorded any weight, it would appear that the California legislature, in enacting the present section 2280, was merely attempting to prevent the unwary trustor from permanently and unknowingly dispossessing himself of his property. If that be true, we cannot conceive of any sound reason why the legislature would want to limit the ameliorative aspect of section 2280 solely to trustors who employed written trusts. Since there are no restrictions on the creation of oral trusts in California, such a limitation would appear not only to be inconsistent with the suggested legislative rationale of section 2280, but equally inconsistent with the very language of that section. Thus, the amended section specifically provides that "every voluntary trust shall be revocable" and to hold that such sweeping language should be limited by the word "instrument" in the exception clause would appear to exalt formalism over the substantive purpose of that section.

We have been cited to no California case which has entertained the precise issue before us, but inasmuch as section 2280 has been before the California courts as well as this Court, we think it useful to consider a few of those decisions for whatever light they may shed on our inquiry. In *Lois J. Newman*, 19 T.C. 708 (1953), aff'd. 222 F. 2d

131 (C.A. 9, 1955), this Court had before it the issue whether either an earlier oral trust or a subsequent written trust was irrevocable under section 2280. While that case held, on the facts presented, that neither trust was irrevocable, the inference is clear throughout the opinion that had the oral trust been "expressly made irrevocable," the mere use of the word "instrument" in section 2280 would not have precluded it from being so. On appeal the Ninth Circuit, after reiterating the contentions of the respective parties, affirmed the Tax Court decision without in any way suggesting that the oral trust there in question could not have been irrevocable under section 2280. In *Fleishman* v. *Blechman*, 306 P. 2d 548 (Cal. App. 1957), one of the issues presented was whether the lower court had correctly decided that an oral trust was revocable and had in fact been revoked. In affirming the lower court, the California appellate court held, contrary to appellants' contention, that the lower court decision "necessarily required not only a determination of whether the trust was revocable or irrevocable but also, if revocable, whether it had been revoked." The language used by the appellate court throughout that opinion was couched in terms which appear to clearly suggest that the oral trust could have been irrevocable under the statute had the facts warranted that result. In addition, the appellate court stated that:

The finding that the trust was revocable is correct, since there was no *agreement* that it was to be irrevocable. Civil Code, sec. 2280. [Emphasis added.]

We think it significant that with the issue of the irrevocability of an oral trust squarely before it, the appellate court in no way suggested that such a trust could not be irrevocable under section 2280. To the contrary, the court merely indicated, while specifically citing section 2280, that the trust was revocable since there was no "agreement" that it was to be irrevocable. In using the word "agreement" rather than the precise language of the statute, i.e., "instrument creating the trust," the court at least intimated that the trust could have been irrevocable had it been "expressly made irrevocable," as required by the statute.

We recognize that neither court in *Newman* or *Fleishman* had before it the precise issue confronting us. However, because each of those cases considered the application of section 2280 to an oral trust, we think the inference raised by those opinions, albeit dicta, should be considered in the absence of any more compelling case authority. From our consideration of the relevant decisions, and the language of the statute itself, we think the California legislature, by enactment of the amended section 2280 in 1931, did not intend to establish a rule of irrevocability for written trusts only, leaving the irrevocability of oral trust to be decided under the common-law rule. We agree with

respondent's alternative argument and hold that the irrevocability *vel non* of the oral trust in question can and must be decided pursuant to section 2280. However, in order to render an oral trust irrevocable, the statute requires that the trust must be "expressly made irrevocable" and in interpreting this statute, the Ninth Circuit in the *Newman* case defined "expressly" as "distinctly, clearly, unmistakably, or in direct terms, as distinguished from impliedly or inferentially." Applying that definition to the facts herein, we conclude that the decedent, in creating the oral trust, did not "expressly" indicate that the trust was to be irrevocable. The record discloses that the decedent gave his son currency to be used for decedent's invalid wife after decedent's death. In the absence of any other evidence with respect to the terms of the trust, we must hold that the oral trust was revocable upon its creation and remained revocable to the time of decedent's death, requiring the decedent's community property interest in that currency to be included in his gross estate under section 2038 of the Code.[5]

The issue remaining for our determination is whether certain expenses listed in the estate tax return and deducted in full from decedent's gross estate should be disallowed to the extent of one-half as representing the community obligations of the surviving spouse rather than the obligations of decedent. The expenses in question are the following: [6]

| | | | |
|---|---|---|---|
| Funeral expenses | $1,876.90 | Miscellaneous debts | $95.32 |
| Executor's commissions | 5,335.13 | Expenses of last illness | 595.35 |
| Attorney's fees | 5,335.13 | State gift tax | 1,172.06 |
| Accountant's fees | 500.00 | Property taxes | 631.64 |
| Appraiser's fees | 272.71 | | |

Pursuant to section 2053(a) of the Code,[7] funeral and administrative expenses, debts of the decedent, and mortgage and liens on prop-

---

[5] Inasmuch as we have sustained respondent's position under sec. 2038, we need not consider whether a similar result might obtain under sec. 2037.

[6] The only claimed deduction disallowed in its entirety by respondent was the Federal gift tax in the amount of $2,475.31. Petitioner concedes by stipulation that if the oral transfer in trust was not a completed irrevocable gift, decedent's community property share of it, or $54,500, is includable in his estate and no gift tax was due thereon. Since we have held under the first issue that the oral transfer was revocable, it follows that no Federal gift tax was due nor deductible by the estate.

[7] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,
(2) for administration expenses,
(3) for claims against the estate, and
(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

erty included in the gross estate are proper deductions from the gross estate provided such expenses and debts are "allowable by the laws of the jurisdiction * * * under which the estate is being administered." Respondent has disallowed decedent's estate one-half of the foregoing claimed expenses on the theory that in California, a community property State, only half of the expenses claimed constitutes an obligation of the decedent, the other half constituting the community obligation of the surviving spouse.

Subsequent to the trial and filing of initial briefs in the instant case, this Court in *Estate of Hugh C. Hutson*, 49 T.C. 495 (1968), decided the precise issue in favor of respondent's position after thoroughly reviewing relevant case and statutory law. Inasmuch as the *Hutson* case similarly involved the law applicable to the State of California, no purpose would be served by restating what was said there. Accordingly, we sustain respondent's position on the authority of the *Hutson* case and hold that decedent's estate was entitled to a deduction for only one-half of the expenses in question.

*Decision will be entered for the respondent.*