ESTATE OF HAROLD E. CASEY, ANGELA E. CASEY, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2661–68.    Filed February 8, 1971.

*Robert H. Showen*, for the petitioner.
*Edward B. Simpson*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency in petitioner's estate tax of $13,262.81. The sole issue to be decided is whether the value of certain shares of stock, transferred in trust by decedent during his lifetime, is includable in his gross estate by virtue of section 2038.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts together with the exhibits attached to the stipulation are incorporated herein by this reference.

The decedent, Harold E. Casey (hereinafter referred to as Casey or decedent), died testate in Burlingame, Calif., on January 17, 1964, and was survived by his wife, his niece Sally Charles, and her husband, Stanley Charles, and the Charles' four children. Decedent's wife, Angela Casey (hereafter referred to as Angela), was named and duly appointed as the executrix of the estate, and at the time of filing the petition herein resided in Hillsborough, Calif. Decedent's estate tax return was filed April 19, 1965, with the district director of internal revenue, San Francisco, Calif. Decedent and Angela were, at all times relevant herein and until his death, husband and wife and domiciled in the State of California.

At the time of the transfers described hereafter the H. E. Casey Co. (hereinafter referred to as the company) was a closely held family corporation. All of the shares owned by Casey and Angela were held as community property under the laws of California. On January 15, 1957, Casey and Angela made voluntary transfers of an equal number of shares in the company to Sally Charles (their niece), Sally Charles' husband, and to each of the Charles' four children.

The transfers were made without consideration and appear as follows:

| Total shares | Shares allocable to decedent | Shares allocable to Angela | Donee |
|---|---|---|---|
| 1,250 | 625 | 625 | Stanley P. Charles |
| 1,250 | 625 | 625 | Sally Charles |
| 1,250 | 625 | 625 | Sally Charles as trustee for Stanley P. Charles III |
| 1,250 | 625 | 625 | Sally Charles as trustee for Susan Mary Charles |
| 1,250 | 625 | 625 | Sally Charles as trustee for Christopher Casey Charles |
| 1,250 | 625 | 625 | Sally Charles as trustee for Kathleen Charles |
| 7,500 | 3,750 | 3,750 | |

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

On April 9, 1958, Casey and Angela each duly filed gift tax returns reporting the six gifts as set out above. However, due to the annual $3,000 exclusion for gifts and the lifetime specific exemption no tax was owed or paid. The date of each transfer set out above appears on both gift tax returns as January 22, 1957. Also dated January 22, 1957, and attached to each of the above gift tax returns was a two-page document labeled "Trust Agreement." The trust agreement attached to each return contained identical provisions. The trust agreement attached to decedent's return was signed by him at the end of the document in the space provided above his typewritten name. The names of both Angela and Sally Charles (as trustee) were typewritten at the end of the document but there is no handwritten signature of either in the space provided. The trust agreement attached to the return filed by Angela is concluded by the typewritten names of both Casey and Angela as trustors and Sally Charles as trustee but there are no handwritten signatures above any of the names. Article III of the trust agreement provides as follows:

The Trustors shall have the right at any time to amend any of the provisions of this trust agreement, or of any amendment thereto, by an agreement in writing executed by the Trustors and the Trustee, and to revoke this trust in whole or in part by an instrument in writing executed by the Trustors and delivered to the Trustee.

In conjunction with the above-filed gift tax returns and at the request of the Internal Revenue Service, Stanley Charles, Sally Charles, and Sally Charles as trustee, filed "Donee's or Trustee's Information Return of Gifts." The six gifts set out above are shown on this return as being received January 22, 1957.

Sally Charles accepted the four gifts made to her as trustee for her children and took and maintained physical possession of the stock certificates. During conversations with Sally and Stanley Charles, decedent often referred to the shares held in trust as belonging to the children outright. Typical of the references described above is an instance where decedent told Sally Charles that "the children's shares are doing well."

Casey died in 1964 never having revoked or attempted to revoke the trusts set up for his niece's four children. In computing the gross estate for estate tax purposes the value of the stock of H. E. Casey Co. held in trust was excluded. After having filed the estate tax return petitioner determined that the failure to deduct from the gross estate an allocable portion of the executrix's fees had resulted in an overstatement of the taxable estate. Pursuant to this discovery a refund claim was filed with the district director of internal revenue, San Francisco, Calif., and it was in examining the merits of the above claim that respondent determined that decedent's community property share of the stock

transferred in trust should have been included. Respondent, in determining the deficiency resulting from the addition of $52,500 in stock, conceded and took into consideration petitioner's claim for $4,569.32 in deductible executrix's commissions.

OPINION

The sole issue to be decided is whether the gifts made in trust to each of the four children of decedent's niece were revocable gifts within the scope of section 2038(a)(1).[2] If the gifts are found to be revocable, then the value of the shares, representing decedent's community property interest, must be included in his gross estate.

Neither party disputes that determination of whether or not the gift in trust is revocable is governed by the law of California. *Will Flitcroft*, 39 T.C. 52 (1962), reversed on other grounds 328 F.2d 449 (C.A. 9, 1964); *Estate of Walter May*, 8 T.C. 1099 (1947). The only California statute regarding the revocability of trusts reads as follows:

Sec. 2280. Revocation

Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected hereby. * * *

It is clear that the trusts involved herein are voluntary trusts governed by this statute. As such, unless they are found to have been expressly irrevocable, they are deemed by the statute to be revocable.

If the instrument labeled "Trust Agreement" is considered an effective document containing the terms of the gifts in question, Article III therein, expressly and clearly reserving the right to revoke, would dictate a finding for respondent. We are inclined to view the trust agreement as incorporating the terms of the trust. While the actual transfer of the certificates occurred on January 15, 1957, as shown on their face as well as the stock record books of H. E. Casey Co., terms of the trust created at that time were, in our opinion, incorporated and merged into the written document signed by the trustor and dated January 22,

---

[2] SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property * * *

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

1957. This result follows from a reading of another California statute which provides:

Sec. 2254. Declaration of trust; oral declarations; merger of previous declarations into written declaration

SAME. All declarations of a trustor to his trustees, in relation to the trust, before its acceptance by the trustees, or any of them, are to be deemed part of the declaration of the trust, except that when a declaration of trust is made in writing, all previous declarations by the same trustor are merged therein. \* \* \*

Assuming that the document supersedes the prior oral declaration of January 15, petitioner contends that Article III providing for revocability found its way into the document through inadvertence or mistake. The only evidence offered in support of this assertion is testimony by Angela Casey, Sally Charles, and Stanley Charles that in conversations with them prior to his death but subsequent to the gifts, Casey made reference to the shares held in trust as belonging to the children. This, they argue, evidences an intent that the gifts in trust were irrevocable and therefore the revocability clause was necessarily included due to error. We disagree. We think decedent's reference to the shares as belonging to the children, more specifically that "the children's shares are doing well," is entirely consistent with an intent that the gift be revocable. Even if we were to accept petitioner's argument, however, we believe that under California law the document, as written, would prevail. For petitioner to prevail, it must be shown that prior to the writing decedent expressed his intent that the trusts be irrevocable and in addition that it had been agreed that the written document should contain a provision indicating irrevocability. In such a case the California courts might reform the document to include an omission or correct an erroneous provision. *National Bank* v. *Exchange Nat. Bank*, 199 Pac. 1, 186 Cal. 172 (1921).

Under the circumstances of the present case we believe the document must prevail. Petitioner's arguments that decedent's intent was contrary to that expressed in the agreement is weak at best. To presume in the face of a signed document that decedent either did not read it or did not understand what he read, would require far more evidence than that adduced by petitioner here.

Petitioner's primary argument is that at the time the transfer was made on January 15, 1957, an oral trust was created rendering the subsequent written trust agreement superfluous and irrelevant. While there is no doubt that oral trusts can be created under California law, to ignore the subsequent writing would require ignoring section 2254 of the California Civil Code set out above. However, assuming arguendo that we were willing to do so and thereby decide this case on the basis of the oral trust, our conclusion would not change. In this event

our decision in *Estate of Henry James Davis*, 51 T.C. 361 (1968), would be indistinguishable and controlling.

The facts of *Davis* are quite similar to the case before us. There the decedent and his wife had transferred $109,000 in currency to the son, John, as trustee. The funds, pursuant to oral instructions, were to be used for the benefit of decedent's wife after decedent's death. John accepted the currency and held it as trustee. Delinquent gift tax returns were filed and the tax was paid. Upon decedent's death there was asserted a deficiency in his estate tax on the basis that the gift was revocable under section 2280, Cal. Civ. Code, *supra*, and his community property share of the trust ($54,000) must be included in his estate. Holding that the trust was revocable (under Cal. Civ. Code sec. 2280) and within the scope of section 2038, this Court said:

However, in order to render an oral trust irrevocable, the statute requires that the trust must be "expressly made irrevocable" and in interpreting this statute, the Ninth Circuit in the *Newman* case defined "expressly" as "distinctly, clearly, unmistakably, or in direct terms, as distinguished from impliedly or inferentially." [3] [*Estate of Henry James Davis, supra* at 368.]

Petitioner tries in vain to distinguish this case from *Davis*. Petitioner asserts that the timely filed gift tax returns filed in this case, as opposed to the delinquent returns filed in *Davis*, are a sufficient basis on which to distinguish the two cases. The importance petitioner attributes to the gift tax returns in both cases is misplaced. Petitioner contends that the gift tax returns in *Davis*, having been filed 3 years after the gift was made, is evidence that at the time of the gift the donor-trustor intended that the trust be revocable, creating an incomplete gift which does not require a gift tax return. Applying this reasoning to the present case, petitioner concludes that decedent's filing of timely returns at the time of making the gifts evidences an intent to make a complete gift requiring a return which by definition requires that the gift be irrevocable.

The fallacy in this reasoning is patent. The filing of a gift tax return may well demonstrate a lack of familiarity with tax law rather than an intent to create an irrevocable trust. Moreover, to use this fact as a basis on which to distinguish this case from *Davis* would require elevating its significance far out of proportion. There is no hint in the *Davis* opinion that this Court relied on the delinquent returns in reaching its conclusions. In fact, a careful reading of the opinion fails to disclose mention of the fact other than in the Findings of Fact. There is no basis for holding that the timeliness of the filing of the return here calls for a contrary result. Further, as pointed out above, neither

---

[3] Reference to *Newman* is to *Newman* v. *Commissioner*, 222 F.2d 131 (C.A. 9, 1955), affirming 19 T.C. 708 (1953).

the filing of returns nor their timeliness is probative of revocability, and certainly not a basis on which to distinguish clear authority.

Lastly, in attempting to distinguish *Davis*, petitioner contends that while in *Davis* there was no evidence expressly showing the trust to be irrevocable, such evidence is abundant in the present case. Petitioner's view of the evidence is distorted. The only evidence in the entire record that could possibly tend to show an irrevocable intent on decedent's behalf is his declarations regarding the gifts set out *supra*. As pointed out earlier, these statements are entirely consistent with an intention that the trusts be revocable. To assert that such statements are sufficient to satisfy the statutory test requiring a direct, distinct, clear, unmistakable express declaration of irrevocability is folly.

For the foregoing reasons we are left with no alternative but to find that the gifts made by decedent were revocable transfers under California law and consequently under section 2038 must be included in decedent's estate.

*Decision will be entered for the respondent.*