COMMISSIONER OF INTERNAL REVE-
NUE v. CLARK.

COMMISSIONER OF INTERNAL REVE-
NUE v. RUTHERFORD.

Nos. 10676, 10677.

United States Court of Appeals
Seventh Circuit.

Feb. 19, 1953.

Charles S. Lyon, Asst. Atty. Gen., Hilbert P. Zarky, Ellis N. Slack, Robert N. Anderson, George F. Lynch, Sp. Assts. to the Atty. Gen., for petitioner.

Hubert L. Will, Nelson, Boodell & Will, Chicago, Ill., Younge, Frederick & Rutherford, Peoria, Ill., of counsel, for respondents.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

These are petitions to review a decision of the Tax Court holding that the income of certain charitable trusts for the year 1946 was not properly taxable to the respondents, as asserted by the Commissioner. The two cases were considered together by the Tax Court inasmuch as each presented identical questions for decision. They are similarly presented to this court and will be treated accordingly.

There is no dispute concerning the facts as found by the Tax Court, which follow a stipulation entered into by the parties. However, even though only a question of law is involved, we think a statement of the facts is material.

Respondents (sometimes referred to as petitioners) are sisters. Forest Park Home Foundation (called the Foundation) was organized as an Illinois not-for-profit corporation in 1939. It is a donee, contributions to which are deductible under § 23(o) (2) of the Internal Revenue Code, 26 U.S. C.A. § 23(o) (2). The purpose of the Foundation was to meet the need in the Peoria, Illinois, community for the care, maintenance and establishment of a home for the aged. Under its charter and by-laws, gifts could not revert to the donors and, in the event of the dissolution of the Foundation, its assets were distributable to other charities. The Foundation was organized by three Peoria citizens, of whom one, W. H. Sommer, was the father of petitioners. Petitioners being interested in the Foundation's program, each, on December 1, 1941, executed separate and identical deeds of trust. Such trusts contained the following provisions (in the language of the Tax Court):

"Each petitioner transferred 15,000 shares of the common stock of the Keystone Steel and Wire Company of Peoria, Illinois, to the Foundation which was trustee and beneficiary. Each trust was to be irrevocable for five years, though it could be extended. At the expiration of the term, the corpus of each trust, but no accumulation of income, would be returned to the settlor. The trust agreements expressly provided that all income from the trust estate was to be applied to the general charitable purposes of the Foundation and was not in any way to be retained as part of the trust corpus. During the period of the trusts, the trustee was to have 'full and complete control of the trust assets, and all the powers and rights in and in connection with said trust assets, to the same extent as though the stock had been transferred to the name of Forest Park Home

Foundation on the books of the Corporation.' In the event of dissolution of the Foundation, the trusts' assets were to go to other charities, expressly prohibiting return to the grantors. The trust agreements provided that the trusts could be extended, but forbade any shortening. The trusts further provided that only a currently equivalent number of shares of Keystone stock were to be returned to the settlors at the end of the trust term without accruals or additions because of income or profits."

Six days after the creation of the trusts came the attack upon Pearl Harbor. It shortly became apparent that the original schedule of five years for establishing the home was inadequate. The rising costs of construction and the war economy made it evident that more funds, as well as more time, would be necessary. Accordingly, on December 1, 1942, petitioners extended the irrevocable period of the trusts for at least five additional years, to December 1, 1951, all other provisions remaining unchanged. In the taxable year 1946, the Foundation was directed by a board of directors of nine members representing a cross-section of the Peoria community. Neither of the petitioners was a director, but three of their relatives were.

Also (in the language of the Tax Court):

"Under the terms of the trusts petitioners had no power with respect to the administration of the trusts or the distribution of the income therefrom. Moreover, the petitioners did not and have not attempted, either directly or indirectly, to influence or control the decisions of the board of directors of the Foundation as trustee or beneficiary under the trusts.

"The program contemplated by the Foundation has been carried out during the 10-year period in that a 125-bed home has been built and is occupied by inmates and the charity is functioning as intended by its founders.

"During the taxable year 1946, the Foundation received dividends of $42,-750 on the 15,000 shares of stock trans-

96

ferred originally by each petitioner to the trusts dated December 1, 1941."

Further (in the language of the Tax Court):

"Petitioners received no benefits directly or indirectly from the trusts. Under the terms of the trusts petitioners retained no powers of disposition of income or corpus by revocation, alteration, or otherwise."

For the year 1946, petitioner Clark returned a net taxable income of $13,585.83, and petitioner Rutherford returned a net taxable income of $14,903.92. The Commissioner assessed a deficiency on the basis of $42,750.00 additional income to each petitioner, which represented the income received by the Foundation from dividends on the shares of stock transferred by the trust indentures to the Foundation. A deficiency was assessed against petitioner Clark for $27,946.62, and against petitioner Rutherford for $28,801.93. In view of the discussion to follow, it is interesting and perhaps of some pertinency to note that the Commissioner determined deficiencies against each of the petitioners for the years 1944 and 1945, upon the same basis that deficiencies were determined for the year 1946. However, as pointed out by the Tax Court, it was stipulated that there were no deficiencies for those years. Also, each of the petitioners created a trust indenture dated June 29, 1943, which was irrevocable until June 29, 1953, or for a period of ten years. These indentures contained the same provisions and were for the same purpose as the trusts created December 1, 1941 and now in dispute. The Commissioner determined deficiencies on the income from these 1943 trusts but, as the Tax Court stated:

"The respondent [Commissioner] now concedes that the dividends * * * are not taxable to petitioners because each trust had a duration of 10 years."

The Tax Court stated the question of law before it as:

"* * * whether the settlor-petitioners should be taxed on the charitable trust income solely because the duration of the trust is nine instead of

10 years, since the settlors have given up all other economic and legal aspects of ownership. Respondent [Commissioner] concedes in his brief that if the trusts in question were for a period of 10 years, the income therefrom is not taxable to petitioners."

The Tax Court stated:

"Respondent contends that under the Clifford regulations, Regulations 111, section 29.22(a)–21, these trusts are nine year trusts and taxable."

The Tax Court, after pointing out that the trusts were irrevocable, were to run for a period of at least nine years as extended on December 1, 1942, and that petitioners during such time retained no power or control over either the corpus or the income, none of which was to be applied for the benefit of any member of petitioners' family group, concluded:

"We hold that the income of the trusts for the taxable year in question was not taxable to petitioners under section 22(a) of the Internal Revenue Code or Helvering v. Clifford, supra, [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788] or Treasury Regulations 111, section 29.22(a)–21. We do not think Helvering v. Clifford, supra, or section 29.22(a)–21 of Regulations 111 were intended to or do apply to the income of a trust such as we have here."

It is not clear on what basis the Tax Court refused to give effect to the regulation relied upon by the Commissioner. It could have been because the court treated the duration of the trusts as of ten years, in which case the regulation was inapplicable; it could have been because the court thought the regulation should not be given effect retroactively, and it is possible that the court regarded the regulation as unreasonable and, therefore, void as beyond the power of the Treasury to promulgate.

Obviously, the question for decision here is whether the Tax Court erred in rejecting Commissioner's determination of a deficiency in the income tax returns of the petitioners for the year 1946 and in holding that the income of the trusts for said year was not taxable to petitioners.

Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22, generally defines "gross income" as follows:

> " 'Gross income' includes gains, profits, and income derived from * * * interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * "

The full sweep of this provision has been often explored by courts and others and we suspect the process will continue indefinitely. Particularly is this so when the income in question is derived from property held in trust, as in the instant situation. Whether such income is that of the settlor, the trustee, or the beneficiary is oftentimes difficult to ascertain. The many cases furnish numerous guides to be employed in making such determination but the adjudicated law can hardly be said to be settled. In Helvering v. Stuart, 317 U.S. 154, 168, 63 S.Ct. 140, 148, 87 L.Ed. 154, the court stated:

> "Economic gain realized or realizable by the taxpayer is necessary to produce a taxable income under our statutory scheme. That gain need not be collected by the taxpayer. He may give away the right to receive it as was done in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, Helvering v. Eubank, 311 U.S. 122, 125, 61 S.Ct. 149, 150, 85 L.Ed. 81, and Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. But the donor nevertheless had the 'use [realization] of his economic gain.' 311 U.S. at 117, 61 S.Ct. at page [144], 147. In none of the cases had the taxpayer really disposed of the res which produced the income."

The cases disclose that many factors have been utilized by courts in ascertaining whether a trust-settlor has from the trust income realized an economic gain. The most important case perhaps and certainly the most controversial is that of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. There, the court sustained the decision of the Tax Court which had held that the settlor was the owner of the corpus after the trust was created and was, therefore, chargeable with its income. The court mentions numerous factors which led to this conclusion, such as the short duration of the trust, the fact that the wife was the beneficiary, and the control which the settlor retained over the corpus. The court pointed out, 309 U.S. at page 335, 60 S.Ct. at page 556:

> "In substance his control over the corpus was in all essential respects the same after the trust was created, as before. * * * We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact."

The court further stated, 309 U.S. at page 336, 60 S.Ct. at page 557:

> "Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22(a)."

It was the "bundle of rights" retained by the settlor from which the court concluded that the husband remained the owner of the trust property and, therefore, chargeable with its income.

Many cases have been decided since Clifford. A reading of these cases reveals that the doctrine there announced has led to some confusion and that its application has been found difficult in particular cases. We shall not attempt to discuss these many cases but we think it can be rather firmly asserted that they all in the main employ the factors enumerated in Clifford. The Commissioner appears to so recognize because he concedes that his determination of deficiencies in petitioners' tax returns for 1944 and 1945 was erroneous.

98

The Commissioner, in support of his determination of deficiencies for 1946, relies solely upon Treasury Regulation 111, promulgated under the Internal Revenue Code on December 29, 1945, and applicable to taxable years commencing January 1, 1946. The pertinent portion of this regulation is § 29.22(c)–21, which provides:

"Income of a trust is taxable to the grantor where the grantor has a reversionary interest in the corpus or the income therefrom which will or may reasonably be expected to take effect in possession or enjoyment—

"(1) within ten years commencing with the date of the transfer * * *."

Petitioners attack the regulation upon three grounds: (1) its application to the instant situation would give it a retroactive effect and, in any event, the trusts are not merely for nine years, as asserted by the Commissioner, but are ten-year trusts; (2) the regulation is unreasonable and arbitrary and, therefore, void, and (3) it is unconstitutional inasmuch as it deprives petitioners of their property without due process, that is, without a hearing on the issues existing between the taxpayer and the Commissioner and which arise because of the deficiencies asserted by the Commissioner.

■■■ We agree with the petitioners in all three contentions. Assuming that the regulation is valid, it is not discernible on what basis it should be applied to the income of trusts which had been in existence for some four or five years prior to its promulgation. By such application, income from the trust property which the Commissioner concedes was not that of petitioners prior to 1946 becomes that of the petitioners in 1946 and thereafter. Moreover, we think the trusts were for the duration of not less than ten years, and certainly this was so on January 1, 1946, when the regulation became effective, and for that reason the regulation cannot be properly applied.

■■■ More important, the regulation is void because it is unreasonable and arbitrary. Our conclusion in this respect is closely intertwined with our view that it is also unconstitutional, and the two issues can be treated together. We recognize that courts have indulged in considerable liberality in sustaining regulations adopted by administrative agencies. But, as was stated in Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 1010:

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity."

■■ Under the relevant section of the Revenue Act, the question as to whether the income from the trusts was that of petitioners was one of fact. It has been so treated and regarded from time immemorial. It was a factual issue upon which the Tax Court was charged with hearing all relevant testimony and making its findings. As was stated in Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037:

"And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding."

And again, 312 U.S. on page 560, 61 S.Ct. 723, the court stated:

"Congress has entrusted the Board with exclusive authority to determine disputed facts. Under these circumstances we do not feel that petitioner should be foreclosed from all opportunity to offer evidence before the Board on this issue, however remote may be his chance to take his case out of the Clifford rule."

In the Clifford case, 309 U.S. 331, at page 336, 60 S.Ct. 554, 557, the court stated:

"Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue."

It must be kept in mind that the regulation does not merely create a rebuttable presumption; it is conclusive. When it appears that the trust is for a period of less than ten years, that *ipso facto* determines that the income is that of the settlor. If this regulation is to stand, it means that in reality there is no issue for the Tax Court to determine. There could be no purpose in the taxpayer offering or in the Tax Court hearing evidence as to the factors involved in the situation. In the instant case, if the Tax Court had given effect to this regulation, as the Commissioner urged, there would have been no occasion and no reason for it to consider the facts and make findings. They would have been immaterial.

Petitioners, after the creation of these trusts, rested secure in the belief that they were not the owners of the income derived therefrom and that it was of no economic benefit or gain to them. Every adjudicated case of which we are aware would have sustained that belief and we doubt if a competent lawyer could have been found who would have disagreed. The Commissioner tacitly concedes as much because he admits that the income was not that of petitioners for the years 1944 and 1945. Without any alteration in the trust indentures and without any change in the relation of any of the parties thereto, that which was not income of petitioners in 1944 and 1945 became such in 1946. This remarkable transformation results, according to the Commissioner, from the regulation under discussion. It is a result based upon fiction rather than the actualities of the situation. The result is so unreasonable and unfair as to be shocking. The regulation is in conflict with § 22(a) and with all adjudicated cases. We think it is void.

■ As noted, the regulation which decrees that the income from a trust is that of the settlor for the sole reason that its duration is for a period of less than ten

years creates a conclusive or irrebuttable presumption. Such a presumption states a rule of substantive law. This is in contrast to a rebuttable presumption which only states a rule of evidence and which the opposing party is entitled to overcome by proof. United States v. Jones, 9 Cir., 176 F.2d 278, 288. And the Supreme Court has held that a statute which creates a conclusive presumption under circumstances closely akin to those of the instant case contravenes the Fourteenth Amendment if enacted by state legislature and the Fifth Amendment if enacted by Congress.

In Schlesinger v. State of Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557, the Supreme Court struck down as violative of the Fourteenth Amendment a statute of the State of Wisconsin which provided in effect that gifts of a decedent's estate made within six years of his death were made in contemplation thereof. The court, 270 U.S. at page 239, 46 S.Ct. at page 261, stated:

"The challenged enactment plainly undertakes to raise a conclusive presumption that all material gifts within six years of death were made in anticipation of it and to lay a graduated inheritance tax upon them without regard to the actual intent. The presumption is declared to be conclusive and cannot be overcome by evidence. It is no mere prima facie presumption of fact."

In Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, the court likewise struck down a congressional enactment which created a conclusive presumption that gifts made within two years prior to the death of the donor were made in contemplation of death, on the ground that the provision violated the Fifth Amendment of the Constitution. The court pointed out, 285 U.S. at page 324, 52 S.Ct. at page 360, that Congress had the power to create a rebuttable presumption, and stated:

"But the presumption here created is not of that kind. It is made definitely conclusive—incapable of being overcome by proof of the most positive character."

The court discussed the Schlesinger case, 270 U.S. 230, 46 S.Ct. 260, and pointed out,

285 U.S. at page 325, 52 S.Ct. 358, that the only difference between the two cases· was that the former considered an enactment of the Wisconsin legislature which violated the Fourteenth Amendment, while the case under consideration involved a congressional enactment which violated the Fifth Amendment. The court, 285 U.S. at page 327, 52 S.Ct. at page 361, stated:

"The presumption here excludes consideration of every fact and circumstance tending to show the real motive of the donor. The young man in abounding health, bereft of life by a stroke of lightning within two years after making a gift, is conclusively presumed to have acted under the inducement of the thought of death, equally with the old and ailing who already stands in the shadow of the inevitable end."

And further the court stated, 285 U.S. at. page 329, 52 S.Ct. at page 362:

"This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment."

In Hoeper v. Tax Commission of Wisconsin, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248, a statute of the State of Wisconsin which authorized an assessment of tax against a husband computed on the combined total of his and his wife's income was held unconstitutional, in violation of the Fourteenth Amendment. The court reaffirmed its holding in the Schlesinger case, 270 U.S. 230, 46 S.Ct. 260. The court stated, 284 U.S. at page 215, 52 S.Ct. at page 122:

"That which is not in fact the taxpayer's income cannot be made such by calling it income."

It thus appears that even Congress would be without power to create the conclusive presumption which the Treasury has done in the regulation under attack. It is even more certain that an administrative agency is without authority to promulgate such a regulation. We conclude it is void because it violates the Constitution and, in any· event, is in conflict with the congressional enactment on the subject and is arbitrary and unreasonable.

The decision of the Tax Court is Affirmed.