*Decision will be entered under Rule 50.*

WILL FLITCROFT AND AGNES D. FLITCROFT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 80074, 88894.    Filed October 9, 1962.

*Ernest R. Mortenson, Esq.*, and *Eugene Harpole, Esq.*, for the petitioners.

*Thomas F. Greaves, Esq.*, for the respondent.

Scott, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1953, 1954, 1955, and 1956 in the respective amounts of $36,958.95, $39,281.86, $25,666.01, and $31,047.73.

The issue for decision is whether the income reported in the years 1954, 1955, and 1956 by three trusts created by petitioners for the benefit of their minor son and daughter should be included in petitioners' income.

In the determination set forth in the notice of deficiency respondent included the income reported by these three trusts in the year 1953 in petitioners' income but on brief concedes that the assertion of a deficiency against petitioners for the year 1953 is barred by the statute of limitations. Certain issues raised by petitioners in their petition were conceded at the trial.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife residing in Los Angeles County, California, filed joint Federal income tax returns for the calendar years 1954, 1955, and 1956 with the district director of internal revenue at Los Angeles, California.

On their joint Federal income tax returns petitioners reported as part of their gross income net profits received from a partnership known as Western Hydraulic & Service Company in the amounts of $74,829.26, $63,363.44, and $69,768.83 for the years 1954, 1955, and 1956, respectively. Petitioners first became associated with Western Hydraulic & Service Company (hereinafter referred to as Western Hydraulic) on November 1, 1945, when they and two other persons executed a partnership agreement under which each of petitioners and each of the other persons became a partner with a 25-percent interest in the partnership. The partnership was formed for the manufacture and assembly of hydraulic parts, assemblies, and fit-

tings, general machine shop work, manufacturing work, and the servicing of hydraulic parts, assemblies, and fittings. The duties of petitioner Will Flitcroft in the partnership consisted of managing the plant facilities and supervising production, and the duties of one of the other partners consisted of contacting customers and selling partnership products. The duties of petitioner Agnes D. Flitcroft under this agreement were not specified.

On April 1, 1946, the partnership between petitioners and their two partners terminated and on the same date petitioners purchased the partnership interest of the other two partners, and formed a new partnership in which each owned a 50-percent interest. During the years 1946 through 1952 petitioners, as partners, operated the business of Western Hydraulic, at a plant facility located at 70th and Central Avenue, Los Angeles, California, and subsequent to 1952 and until about November 12, 1953, the business of Western Hydraulic was operated at a plant facility located on West 136th Street in Gardena, California. The property at 70th and Central Avenue was owned personally by petitioner Will Flitcroft and the partnership was permitted to use this property without a lease and without payment of rent therefor.

After the formation of the partnership between petitioners on April 1, 1946, Will Flitcroft managed the company, functioned as chief of quality control, did all of the purchasing of materials, machinery, and tools, did the bidding for customers, and kept up customer relations, as well as supervised production. In the performance of these duties Will Flitcroft worked long hours, 6 days and sometimes 7 days a week.

In June of 1952 petitioner Will Flitcroft became acquainted with Richard H. Miers (hereinafter referred to as Miers), when Miers was sent to the plant of Western Hydraulic by his employer who was doing accounting work for the partnership to make a running audit of the partnership's books. Subsequent to the time that Miers made this running audit petitioner Will Flitcroft terminated the services of the accounting firm by which Miers was employed, engaged and then discharged another certified public accountant to do the work of Western Hydraulic, and then about July 1952 engaged Miers to keep the books and records of the partnership. The partnership paid Miers the prevailing fee of $60 per day for his services.

After Western Hydraulic engaged Miers to render accounting services for it, petitioner Will Flitcroft and Miers discussed from time to time the advantages which petitioners might derive through the creation of trusts for the benefit of their two minor children and the inclusion of these trusts in the partnership. On November 6, 1952, Miers wrote a letter to petitioners suggesting that the partner-

ship, Western Hydraulic, composed of petitioners be dissolved on December 31, 1952, and that a new partnership be formed on January 1, 1953, composed of petitioners and their two minor children, Johnel A. Flitcroft and William R. Flitcroft.

Sometime in November 1952, a meeting was held at petitioners' home at which the petitioners, their children aged 10 and 12 years, Miers, and an attorney were present. The attorney who was present had been an acquaintance of Miers for some time and Miers had recommended him to petitioner Will Flitcroft. The result of the meeting held in November 1952 was a decision to create a 10-year trust for each of petitioners' minor children to which trusts one-half of petitioners' interest in Western Hydraulic was to be conveyed. A new partnership was to be formed that would be composed of petitioners and the trusts for their two minor children. Miers was to be appointed sole trustee of the trusts because petitioner Will Flitcroft had confidence in him. An agreement dated December 31, 1952, dissolving the partnership, Western Hydraulic, was executed by petitioners on a date not shown in the record.

Sometime after January 1, 1953, petitioners and Miers executed two agreements dated January 1, 1953, identical except as to the beneficiary named therein, each entitled "trust agreement" and each stating in part as follows:

This Trust Agreement is entered into between WILL FLITCROFT and AGNES DOROTHY FLITCROFT, husband and wife, as the Trustors, and RICHARD H. MIERS, as the Trustee.

The Trustors have transferred and delivered to the Trustee, without any consideration on their part, the property described in the attached "Schedule A", which is a part of this Trust Agreement, the receipt of which is hereby acknowledged by the Trustee. The said property, together with any other property that may later become subject to this Trust, shall constitute the trust estate, and shall be held, administered and distributed by the Trustee as provided herein.

ARTICLE I

The Trustors shall have the right at any time to add to this Trust other property acceptable to the Trustee, which additional property, upon its receipt and acceptance by the Trustee, shall become a part of the Trust estate.

Article 2 of the trust provided for broad powers of management of the trust corpus by the trustee. Article 3 provided for the accumulation by the trustee of the net income of the trust during the term of the trust, except that under certain circumstances, in the absolute discretion of the trustee payment of all or a portion of the income could be made to the beneficiary of the trust, that the trust should cease and terminate on January 6, 1963, and that upon termination the trustee should pay to the beneficiary the net income of the trust estate then remaining and should deliver and return to the trustors all of the property then remaining that they had transferred and delivered

under the trust to the trustees and any property then in the hands of the trustee which had been acquired by him from the sale or other disposition of the property transferred and delivered to him by the trustors. Article 4 provided that the beneficiary should have no right to alienate his or her interest in the trust. Articles 5 and 6 provided for the appointment of a successor trustee should the trustee resign and the fees to be paid to the trustee. Article 7 of the trust agreement provided as follows:

This Trust has been accepted by the Trustee and will be administered in the State of California, and its validity, construction and all rights thereunder shall be governed by the laws of that State. If any provision of this Trust Agreement should be invalid or unenforceable, the remaining provisions thereof shall continue to be fully effective.

Attached to each of the trust agreements was a statement of the assets, liabilities, and net worth of the partnership, Western Hydraulic, as of December 31, 1952.

At the same time that the trust agreements were executed petitioners and Miers as trustee for each of the two trusts executed an agreement entitled "agreement of partnership," which agreement stated that it was made the first day of January 1953, and provided that the name of the partnership should be Western Hydraulic and Service Company, that the terms of the partnership should begin on January 1, 1953, and should end on December 31, 1963. It provided that the capital contribution should consist of the assets subject to the liabilities as shown on an attached statement of assets and liabilities and further provided:

5. * * *

(b) That said assets shall belong to the Parties hereto equally, and, in order to so vest such assets in them,

(1) First Party hereby assigns to each of the other Parties hereto an undivided equal one-fourth interest of the assets described in "Exhibit A" belonging to him;

(2) Second Party hereby assigns to each of the other Parties hereto an undivided equal one-fourth interest of the assets described in "Exhibit A" belonging to her;

(3) Third Party hereby assigns to each of the other Parties hereto an undivided equal one-fourth interest of the assets described in "Exhibit A" belonging to him as Trustee for Johnel Ann Flitcroft; and

(4) Fourth Party hereby assigns to each of the other Parties hereto an undivided equal one-fourth interest of the assets described in "Exhibit A" belonging to him as Trustee for William R. Flitcroft.

(c) That the capital of the partnership that each Party shall and does hereby contribute to the partnership, shall consist of their interest in said assets (subject to said liabilities) of the agreed net value of Three Hundred Fifteen Thousand, Five Hundred Thirty and 01/100 ($315,530.01) Dollars in which each of the Parties hereto owns an undivided one-fourth (1/4) interest.

The partnership agreement also provided that the contributions of the parties to the partnership provided for therein should not bear interest but that any advances by any party to the partnership in excess of the amount of the original contributions should bear interest at 6 percent per annum, that petitioner Will Flitcroft should be general manager of the partnership at a minimum salary of $25,000 a year to be paid from the partnership funds, and that petitioner Agnes D. Flitcroft should at all times make her services available to the partnership for secretarial work at a minimum salary of $3,000 per year. The agreement further provided that net profits or losses after the payment of salaries to petitioners should be divided equally among the partners and the account of each credited or debited with his or her proportionate share thereof. It further provided that any party might withdraw his or her share of the net profits at the end of any year and that any profits not withdrawn should bear interest at the rate of 6 percent. The agreement also provided that the death of a party or a beneficiary of one of the trusts would not terminate the partnership, but the partnership would continue for the then remaining unexpired term, and the personal representative of the deceased would receive the deceased person's interest in the partnership and his or her share of the net profits or losses.

On May 12, 1954, a certificate of Business Fictitious Firm Name was filed in the office of the county clerk of Los Angeles County, California, wherein it was stated that the firm of Western Hydraulic was composed of the following persons: Will Flitcroft, Agnes Dorothy Flitcroft, and Richard H. Miers, as trustee for William R. Flitcroft and Johnel Ann Flitcroft.

Capital was a material income-producing factor in the partnership, Western Hydraulic.

Petitioners were motivated in executing the trusts for their two minor children and the partnership agreement with Miers as trustee of each of these trusts, by a desire to save taxes by a part of the anticipated partnership income being distributable to the trusts, a desire to create a separate estate for their children, a desire to have the share of the profits attributable to the two trusts remain for use in the partnership business, and a desire to interest the children in the business of the partnership as they matured in years.

Petitioner Will Flitcroft had also concluded that it would be advantageous to have Miers do the accounting work for Western Hydraulic and to help operate the business. During the years 1953 through 1956 Miers spent most of his time in connection with the business of Western Hydraulic. He took charge of production control, accounting, contract negotiations, renegotiation of Government

58

contracts, and cost records. He also handled labor relations for the partnership and served as its controller, as well as working with the sales and engineering departments on the submission of bids for contracts. He hired office personnel and dealt directly with customers of Western Hydraulic. During the years 1953 through 1956 Miers was paid a fee of $60 per day or approximately $900 per month for the services he rendered Western Hydraulic.

Sometime in 1953 or prior thereto petitioner Will Flitcroft recognized that the premises then occupied by Western Hydraulic had become too small for the operation in which the company was then engaged. In March or April 1953 petitioners acquired a 60-percent interest in a parcel of real estate known as 1510 West 135th Street, Gardena, California. The owners of the other 40-percent interest in this property were John O. Best and his wife. Petitioner Will Flitcroft sold the building he owned at 70th and Central Avenue, Los Angeles, California, which was occupied by Western Hydraulic, and a factory building suitable for use by Western Hydraulic was built on the property on West 135th Street acquired by petitioner and the Bests. Western Hydraulic moved into this new building upon its completion about November 1, 1953. On September 15, 1953, a lease agreement was executed between petitioners and the Bests as lessors and Western Hydraulic as lessee, under the terms of which it was agreed that Western Hydraulic would lease the improved property for a period of 10 years commencing October 1, 1953, and terminating September 30, 1963, for a monthly rental of $1,600 of which Western Hydraulic would pay $960 to petitioners and the remaining $640 to the Bests.

On or about October 1, 1953, petitioners and Miers executed an agreement dated October 1, 1953, entitled "trust agreement" naming petitioners' two minor children as beneficiaries. The provisions of this trust agreement, except as to the named beneficiaries and commencement and termination dates were the same as those of the two separate trusts dated January 1, 1953, created by petitioners for their two minor children. Under date of October 1, 1953, petitioners conveyed by quitclaim deed their 60-percent interest in the property at 1510 West 135th Street, Gardena, California, to Miers as trustee, and also assigned their interest as lessors under the lease of the premises to the trust. The trust, as stated in the trust agreement, was to terminate on October 6, 1963.

On January 1, 1957, the business of Western Hydraulic was incorporated. At the time of incorporation, each of the trusts dated January 1, 1953, received 5,000 shares of stock of the corporation, such

shares having a total value of $120,000, and in addition each trust received $70,000 of notes of the new corporation.

On April 15, 1954, petitioners, individually, filed Federal gift tax returns for the year 1953, which are identical except as to the name of the taxpayer, each return indicating that the filer thereof made two gifts during the year totaling $31,633.94, being composed of the amount of $22,954.81 to the trust stated to have been created on January 1, 1953, and the amount of $8,679.13 stated to have been made to the trust created on October 1, 1953.

Petitioners filed gift tax returns with the State of California for the year 1953 reporting thereon gifts made to each of their children in trust in the total amount of $35,268.69. Under date of June 29, 1954, petitioners' attorney received a letter from the office of the Controller of the State of California, chief inheritance tax attorney, which stated:

We have examined the trusts executed by the above named donors [petitioners], and are wondering whether at the time of the execution, they had in mind Section 2280 of the Civil Code.

It appears to us that in view of this section, the trusts are revocable, and that no gift tax is due. May we have your thoughts on this point?

Under date of July 21, 1954, petitioners' attorney replied to this letter as follows:

When the trusts were prepared and executed by the Donors [petitioners] consideration was not given to the effect of Section 2280 of the Civil Code.

It was and is the intention of the Donors [petitioners] that the Trust should be irrevocable and therefore I will prepare and have signed by them (and furnish you with a true copy), an amendment to the Trust Indentures making the Trusts irrevocable and waiving any rights the Donors [petitioners] might have to revoke the same under said Section 2280.

I trust this will remedy the situation and the Trusts will then qualify for gift tax purposes.

Petitioners and Miers executed an amendment dated July 30, 1954, to each of the three trust agreements which provided as follows:

WHEREAS, it has been called to the attention of the trustors that, under section 2280 of the Civil Code of the State of California, said trust may be revocable because it is not by its terms made expressly irrevocable; and

WHEREAS, it was, always has been and is the expressed intention of First Parties [petitioners] that said trust should be irrevocable.

Now, THEREFORE, IT IS MUTUALLY AGREED between the parties hereto as follows:

There is hereby added to Article 7 on Page 4 thereof the following:

This trust is by the trustors, hereby expressly made irrevocable.

Under date of September 10, 1954, the office of the Controller of the State of California, Inheritance and Gift Tax Division, issued a notice and determination of gift tax, determining that each petitioner made net taxable gifts to each of their children in the year 1953 in the total amount of $35,268.69.

Petitioners and Miers executed an amendment dated July 1, 1954, to the partnership agreement, changing the provisions for the continuation of the partnership upon the death of a partner as follows:

That the death of any partner shall not terminate this partnership.

Neither partner shall during their lifetime, dispose of their interest in the partnership.

Upon the death of WILL FLITCROFT, the surviving partner or partners shall be obligated to purchase, and hereby agree to purchase his interest in the partnership at its book value as of date of his death and likewise, upon the death of AGNES D. FLITCROFT the surviving partner or partners shall be obligated to purchase and hereby agree to purchase her interest in the partnership at its book value as of date of her death; and WILL FLITCROFT and AGNES D. FLITCROFT does for himself, or herself, his or her heirs, executors and administrators, agree to sell his or her interest to the surviving partner or partners of said book value as of date of his or her death. Thereafter, the estate of the deceased partner shall have no interest in the partnership, and the surviving partners shall have the right to continue the business between themselves without accounting for any trade-name, good-will or other intangible values.

Petitioners, Miers, and Frederick L. Botsford executed an amendment to trust agreement dated December 1, 1954, whereby Botsford became the cotrustee with Miers for the three trusts. Miers as trustee of the two individual trusts consulted with petitioners as to the management of Western Hydraulic. In addition Miers as trustee and cotrustee of each of the three trusts kept the books and records for the trusts, prepared and filed Federal and State of California fiduciary income tax returns for the trusts, and prepared and signed checks for income taxes and trustees' fees on behalf of the trusts. Botsford's acts as cotrustee for each of the three trusts were limited to legal matters connected with the trusts. Separate bank accounts and capital accounts were kept for each of the three trusts. Petitioners have never received any income from the trusts.

On or about November 7, 1958, Botsford and Miers as trustees of the Flitcroft trusts, and petitioners' two minor children by a guardian *ad litem*, filed a complaint in the Superior Court of the State of California in and for the County of Los Angeles against petitioners and Robert A. Riddell, district director of internal revenue, requesting that a declaratory judgment be entered, declaring and adjudicating the respective rights of plaintiffs and defendants pertaining to the written instruments attached thereto which were the two documents entitled "trust agreement" dated January 1, 1953, together with amendments thereto. In the complaint it was stated that the defendant Robert A. Riddell, district director of internal revenue, had refused to recognize the amendments to trust agreements executed on or about July 30, 1954, as being effective, and had refused to recognize that the trust

agreements dated January 1, 1953, constituted irrevocable trusts. The defendant Robert A. Riddell petitioned for removal of the action brought against him to the United States District Court for the Southern District of California, Central Division, which petition was granted, and the action against Riddell was dismissed by the District Court. Upon appeal, the dismissal was affirmed by the United States Court of Appeals for the Ninth Circuit, *Botsford* v. *Riddell*, 283 F. 2d 298. After the affirmance of the District Court order by the United States Court of Appeals for the Ninth Circuit, the remaining parties stipulated and agreed that the matter should be remanded to the Superior Court of the State of California in and for the County of Los Angeles for further proceedings. On November 13, 1961, the Superior Court of the State of California in and for the County of Los Angeles, entered the following order:

IT IS ORDERED, ADJUDGED, AND DECREED that the Trust Agreements, dated January 1, 1953, executed by the defendants Will Flitcroft and Agnes D. Flitcroft, as trustors, and by the plaintiff Richard H. Miers, as trustee, copies of which are attached to the complaint on file herein marked as Exhibit A and B, be and they hereby are reformed in accordance with the express intent of the trustors and trustee so that the following sentence is added to the first paragraph of each of said Trust Agreements: "This Trust is irrevocable."

IT IS FURTHER ORDERED AND DECREED that said Trust Agreements were irrevocable upon their date of execution, January 1, 1953, and the respective rights and obligations of the parties arising from said agreements shall be governed accordingly.

Western Hydraulic filed Federal partnership returns of income for the calendar years 1954, 1955, and 1956 with the district director of internal revenue at Los Angeles, California, reporting its income and deductions on an accrual basis of accounting. On the partnership return for the year 1954 there was reported a loss on the sale of land and building located at 6920 South Central, Los Angeles, California. On the partnership returns of income of Western Hydraulic for the years 1954, 1955, and 1956, ordinary net income was reported in the amount of $114,658.52, $56,726.87, and $69,537.67, respectively. The ordinary net income reported on the returns of Western Hydraulic was allocated thereon as follows:

| Name of partner | 1954 | 1955 | 1956 |
|---|---|---|---|
| Will Flitcroft | [1] $37,414.63 | $14,181.72 | $17,384.41 |
| Agnes D. Flitcroft | [1] 37,414.63 | 14,181.72 | 17,384 42 |
| J. A. Flitcroft Trust | 19,914.63 | 14,181.71 | 17,384 42 |
| W. R. Flitcroft Trust | 19,914.63 | 14,181.72 | 17,384 42 |
| | 114,658.52 | 56,726.87 | 69,537.67 |

[1]These amounts include the $17,500 of salaries of petitioners not included in the subsequent years.

Withdrawals were made from Western Hydraulic during the years 1954, 1955, and 1956 against the capital accounts of the trusts as follows:

| Year | Withdrawal from— | |
|---|---|---|
| | Johnel trust | William trust |
| 1954 | $8,052.05 | $8,052.05 |
| 1955 | 4,938.18 | 4,938.18 |
| 1956 | 1,614.32 | 1,609.93 |

The only expenditures made on behalf of the two trusts during the years 1954, 1955, and 1956 were for Federal and State income taxes and trustees' fees, and in 1954 and 1955 for charitable contributions. Except for the amounts withdrawn, the partnership income allocated to the two trusts was credited to the capital accounts of these trusts on the partnership's books and kept in the business of the partnership as additional operating capital.

Western Hydraulic claimed rental expense deductions on its Federal partnership returns of income for the years 1954, 1955, and 1956, in the respective amounts of $22,392.83, $19,200, and $19,200, which amounts were stated to have been paid as rental for the factory located at 1510 West 135th Street, Gardena, California.

Each of the trusts created for petitioners' children individually filed Federal income tax returns for the year 1954 and subsequent years on a calendar year basis. The trust created for petitioners' children jointly filed a Federal income tax return for a fiscal year December 1, 1953, to December 1, 1954.

Respondent in his notices of deficiency for the years 1954, 1955, and 1956 increased petitioners' income in each year by including therein the total amount of the net income of the partnership, Western Hydraulic, and in determining the net income of Western Hydraulic to be included in petitioners' income, increased the amount of such income as reported on the partnership returns of income by 60 percent of the rental deduction for the factory at 1510 West 135th Street, Gardena, California, claimed by the partnership. In each instance respondent gave as an explanation for the disallowance of the claimed deduction for rent that the amount claimed to be paid to the trust for petitioners' minor son and daughter was not a deductible business expense of the partnership; and for the inclusion of the total income of the partnership in petitioners' taxable income, gave as an explanation that no recognition should be given to the trusts as partners for Federal income tax purposes.

## OPINION.

Respondent takes the position that the broad question here is whether the partnership income reported by the three trusts created by petitioners for the benefit of their children is taxable to petitioners for the years 1954, 1955, and 1956. Respondent's only precise argument in support of this broad contention is that the income of the trusts is taxable to petitioners since under California law the trusts must be deemed to be either revocable trusts for a 10-year term or irrevocable trusts for a period of less than 10 years.[1] Respondent contends that the income of these trusts is taxable to petitioners under the provisions of section 166 of the Internal Revenue Code of 1939 in the event they are found to be 10-year revocable trusts or section 22(a) of the Internal Revenue Code of 1939, or in the alternative, under section 673(a) of the Internal Revenue Code of 1954 if they are irrevocable trusts for a period of less than 10 years.[2]

---

[1] Respondent has not specifically abandoned any other reason in support of his position that the partnership income reported by the trusts is taxable to petitioners. Under the provisions of section 191 of the Internal Revenue Code of 1939 and section 704(e) of the Internal Revenue Code of 1954 partnership interests purportedly transferred to trusts for the benefit of family members, particularly minor children of the transferees, by trust documents valid and irrevocable on their face, are not considered for Federal tax purposes to constitute the alleged trusts as partners if the transaction is a sham lacking in substance. *Roy C. Acuff*, 35 T.C. 162 (1960), affirmed per curiam 296 F. 2d 725 (C.A. 6, 1961). The evidence here shows that the transactions were not shams, that the independent trustees controlled the trust corpus, and that petitioners recognized the trusts as partners and gave public notice of such recognition by the filing of a Certificate of Business Fictitious Firm Name listing the trusts as partners. Respondent in his brief comments that there was no conveyance of the trust property of the two individual trusts to the trustee and that "Exhibit A" attached to the trust agreement did not designate the property transferred to the trust. Respondent does not state the conclusion he contends should be drawn from this comment. We think it clear that the partnership agreement and trust agreements, all dated January 1, 1953, were part of the same transaction and are required to be read together. *Security-First Nat. Bank* v. *Wright*, 47 Cal. App. 2d 787, 119 P. 2d 25, 28 (1941). When these instruments are read together, there is clearly a transfer of the trust corpus of the two individual trusts to the trustee and the designation of the trust corpus is clear.

[2] Respondent does not explain his contention that section 166 and section 22(a) of the Internal Revenue Code of 1939 are applicable to the trusts here involved, nor do petitioners explain their contention that section 673 of the Internal Revenue Code of 1954 is inapplicable except to state that the trusts were created prior to the date of the enactment of the Internal Revenue Code of 1954. As shown in our findings, the individual trusts for William R. Flitcroft and Johnel A. Flitcroft reported their income on a calendar year basis while the joint trust of Johnel A. and William R. Flitcroft reported its income on a fiscal year basis, its first full year beginning December 1, 1953, and ending December 1, 1954. Petitioners reported their income on a calendar year basis, and the returns of income of the partnership were filed on a calendar year basis. Respondent has now conceded that his determination of deficiencies in petitioners' income for the year 1953 is barred by the statute of limitations, and the only years before us are the years 1954 through 1956.

Neither party has directed our attention to any provision of either the Internal Revenue Code of 1939 or the Internal Revenue Code of 1954 which would cause the provisions of the Internal Revenue Code of 1939 to be applicable here except with respect to the income of the joint trust for its fiscal year December 1, 1953, to December 1, 1954. Section 7851 of the Internal Revenue Code of 1954 provides that, except as otherwise provided, chapter 1 of subtitle A of the Internal Revenue Code of 1954 shall apply with

64

Section 676(a) of the Internal Revenue Code of 1954 [3] contains substantially the same provisions as section 166 of the Internal Revenue Code of 1939, and since in our view the Internal Revenue Code of 1954 is applicable with respect to the two individual trusts for the year 1954 and subsequent years, we will consider the arguments of the parties as being directed to section 676(a) of the 1954 Code.

Each of the trusts here involved by its terms was to be administered in the State of California and its validity and construction governed by the laws of that State. Section 2280 of the Civil Code of California specifically provides that every voluntary trust shall be revocable by the trustor by writing filed with the trustee unless expressly made irrevocable by the instrument creating it.[4] Until their amendment on July 30, 1954, none of the trusts here involved contained a provision

respect to taxable years beginning after December 31, 1953, and ending after the date of the enactment of the Internal Revenue Code of 1954. Section 683 of the Internal Revenue Code of 1954 provides:

(a) GENERAL RULE.—This part shall apply only to taxable years beginning after December 31, 1953, and ending after the date of the enactment of this title.

(b) EXCEPTIONS.—In the case of any beneficiary of an estate or trust—

(1) this part shall not apply to any amount paid, credited, or to be distributed by the estate or trust in any taxable year of such estate or trust to which this part does not apply, and

(2) the Internal Revenue Code of 1939 shall apply for purposes of determining the amount includible in the gross income of the beneficiary.

Respondent's regulations issued under sec. 683, I.R.C., 1954, provides:

Part I (section 641 and following), subchapter J, chapter 1 of the Code, applies to estates and trusts and to beneficiaries only with respect to taxable years which begin after December 31, 1953, and end after August 16, 1954, the date of enactment of the Internal Revenue Code of 1954. In the case of an estate or trust, the date on which a trust is created or amended or on which an estate commences, and the taxable years of beneficiaries, grantors, or decedents concerned are immaterial. This provision applies equally to taxable years of normal and of abbreviated length. (Income Tax. Regs., sec. 1.683–1).

This regulation appears to be in accordance with the provisions of the statute. Therefore, except as to the income of the joint trust for its fiscal year December 1, 1953, to December 1, 1954, the taxability of the trust income for all the years here involved is governed by the provisions of the Internal Revenue Code of 1954.

[3] SEC. 676. POWER TO REVOKE.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a non-adverse party, or both.

[4] Cal. Civ. Code.

Sec. 2216. Voluntary trust defined.

Voluntary Trust, What. A voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another. (Enacted 1872.)

Sec. 2250. Trustees defined.

Who are trustees within scope of this chapter. The provisions of this Chapter apply only to express trusts, created for the benefit of another than the trustor, and in which the title to the trust property is vested in the trustee; not including, however, those of executors, administrators, and guardians, as such. (Enacted 1872.)

Sec. 2280. Revocation.

Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected hereby. (Enacted 1872. As amended Stats. 1931, c. 950, p. 1955, sec. 1.)

that it was irrevocable, and, therefore, until July 30, 1954, each of them was a revocable trust. *George S. Gaylord*, 3 T.C. 281 (1944), affd. 153 F. 2d 408 (C.A. 9, 1946); *Erik Krag*, 8 T.C. 1091 (1947); and *Newman* v. *Commissioner*, 222 F. 2d 131 (C.A. 9, 1955), affirming 19 T.C. 708. Petitioners argue that they intended to make the trusts irrevocable from the date of their creation. This same contention was decided adversely to petitioners in *George S. Gaylord, supra.*

Petitioners take the position that these trusts were not voluntary trusts within the meaning of section 2280 of the California Civil Code, and, therefore, the decisions in *George S. Gaylord, supra,* and *Erik Krag, supra,* are not applicable here. Petitioners refer to section 2250 of the California Civil Code (a part of chapter 2 of that Code as is section 2280), which provides that "The provisions of this chapter apply only to express trusts, created for the benefit of another than the trustor" and to the provisions of section 2216 of the California Civil Code which defines a voluntary trust as "an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another."

Petitioners argue that in the instant case the trust was created partially for the benefit of the trustors since petitioners expected to gain the services of Miers in the partnership by the creation of the trusts. Petitioners, in support of their contention rely on *Touli* v. *Santa Cruz Title Company,* 20 Cal. App. 2d 495, 67 P. 2d 404 (1937), and *Blair* v. *Blair,* 44 Cal. App. 2d 140, 112 P. 2d 39 (1941). Neither of these cases refers to the type of trust here involved as not being an express trust under section 2250 of the California Civil Code, but discusses in that connection an ordinary deed of trust given as security for a loan. We think it clear that the trusts here involved were voluntary express trusts for the benefit of another than the grantor. The trusts, themselves, state that they are without consideration. The evidence fails to show any benefit to petitioners of Miers' work for Western Hydraulic which was different after the creation of the trusts from before. Both before and after the creation of the trusts Miers did work of an accounting nature for Western Hydraulic at a fee of $60 a day. The record does not show any other activities engaged in by Miers in connection with the partnership except his consultation on partnership matters with petitioners. There is no evidence to show that such consultations were of any benefit to petitioners or that they were not solely in the interests of the trusts. The evidence shows that the trusts were voluntary express trusts for the benefit of petitioners' minor children. Cf. *George S. Gaylord, supra,* and *Erik Krag, supra.*

Petitioners further argue that a California court has ruled that the trusts were irrevocable from their inception and that this Court

is bound by that interpretation of the California law. It is petitioners' position that since the action sought in the State court proceeding was for a declaratory judgment, it cannot be considered to be nonadversary as was a similar judgment of a State court in *Erik Krag, supra.* There is no validity to the distinction which petitioners draw. At the time the declaratory judgment was sought the trusts were irrevocable and had been since July 30, 1954. The evidence shows no necessity or reason for seeking the declaratory judgment except for its effect upon the Federal tax question which is shown by the complaint in the State court proceeding to have been brought to petitioners' attention prior to the time that proceeding was instituted even though at that time notices of deficiency had not been issued. In this limited sense the judgment of the California court, argued in the instant case to be binding upon this Court, was collusive just as was the judgment discussed in *Erik Krag, supra.* Cf. *Newman* v. *Commissioner, supra.*

The trusts in the instant case were revocable trusts until their amendment on July 30, 1954, and under our holding in *George S. Gaylord, supra,* the income therefrom for the period prior to their amendment would be taxable to the grantor. The only years before the Court in the *Gaylord* case were the years prior to the year in which the trusts there involved were amended to provide expressly that they were irrevocable, whereas in the instant case the earliest year before us is the year during which the trusts were amended. The *Gaylord* case does not pass on the question whether the trusts as amended remained trusts of which the grantor was to be treated as owner under the provisions of section 166 of the Internal Revenue Code of 1939. Respondent in the instant case does not argue that the words "at any time" as used in this section of the Code should be interpreted to mean that if a trust at the time of its inception was revocable, the income therefrom is taxable to the grantor throughout its existence irrespective of its subsequent amendment to make it irrevocable. It appears, however, that this is the underlying assumption inherent in respondent's argument that the trusts here involved should be considered revocable trusts for a term of over 10 years. It may be that respondent does not precisely make this argument since in G.C.M. 18972, 1937-2 C.B. 231, he did not give such interpretation to the words "at any time" as contained in section 166 of the Revenue Act of 1934 which section is substantially the same as the provisions contained in section 166 of. the Internal Revenue Code of 1939 and in section 676(a) of the Internal Revenue Code of 1954. Section 166 of the Revenue Act of 1932 and comparable sections of prior revenue acts provided that where a grantor had "at any time during the taxable year" the power to revest in himself title to any part of the corpus of a trust, the income from such part of the corpus should be

included in the grantor's income. In ruling as to the taxability of income from a trust created in 1933 and amended in April 1934 to delete a provision reserving to the grantor the right to revoke the trust upon a year and a day's notice, respondent in G.C.M. 18972, *supra*, stated:

> Attention will first be given to the question whether any part of the income of the trusts is taxable to the grantor because of the provision originally contained in paragraph 3 of the trust instruments (deleted by the amendment of April ___, 1934) giving the grantor the power to revoke the trusts upon a year and a day's notice. Since the trusts were not revocable "during the taxable year" 1933, the trust income for that year was not taxable to the grantor under section 166 of the Revenue Act of 1932. (See G.C.M. 11640, C.B. XII-1, 144 (1933), and cases cited therein.) However, since the phrase "during the taxable year" does not appear in section 166 of the Revenue Act of 1934, it is held that the income from the trusts for the period January 1 to April ___, 1934 (the date on which the trusts became irrevocable), is taxable to the grantor under the Revenue Act of 1934.

Cf. *J. H. Anderson*, 30 B.T.A. 1275 (1934), and *George S. Gaylord*, *supra*.

In the instant case respondent contends that if the transfers to the trusts here involved are considered under section 673(a) of the Internal Revenue Code of 1954 [5] to have been made on the date the trusts were created, the income of the trusts, even for the years subsequent to their amendment, is taxable to petitioners under the provisions of the Code with respect to revocable trusts. Respondent argues that if after July 30, 1954, these trusts are to be viewed as trusts in which the grantors did not have "at any time" the power to revest in themselves "title to" the corpus, such interpretation must rest on the theory that the amendment of July 30, 1954, making the trusts irrevocable in effect created new trusts with a transfer at that time of the trust corpus thereto so that the grantors had a reversionary interest in the corpus as of the inception of the trust which would take effect in possession or enjoyment within 10 years commencing with the date of the transfer, thus requiring that the grantors be treated as the owners of the trusts under section 673(a) of the Internal Revenue Code of 1954.

Neither party has called our attention to any case dealing with this question in applying the provisions of the income tax laws. In a number of cases involving gift tax, it has been held that property transferred in trust becomes subject to gift tax only when the trust becomes irrevocable. *Newman* v. *Commissioner*, *supra*, and cases cited therein. In *Estate of Robert J. Cuddihy*, 32 T.C. 1171, 1175 (1959), we

[5] SEC. 673, I.R.C. 1954. REVERSIONARY INTERESTS.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception of that portion of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust.

discussed some of the cases dealing with the application of the gift tax statutes to transfers in trust with rights retained by the grantors and pointed out that the decisions in such cases were based upon interpreting the statutory provisions with respect to gift tax as imposing such tax only on a completed transfer of a beneficial interest. In the *Cuddihy* case we distinguished the provisions of the gift tax law from the provisions with respect to estate tax and held that as used in the sections of the Code dealing with estate tax the word "transfer" refers to the time of the transfer of title to the trustee. In so holding, we did not consider as controlling the decision of the United States Court of Claims in *Smith* v. *United States*, 139 F. Supp. 305 (1956), which had relied upon gift tax decisions as bearing on the meaning of the word "transfer" as used in the estate tax provisions. However, we distinguished *Smith* v. *United States, supra,* on a factual basis since the trust involved in the *Smith* case was revocable by the grantor by joint action with her husband whereas the trust being considered in the *Cuddihy* case contained no right or power after its creation by which the grantor might recover the corpus. Similar questions under estate tax provisions were involved in *Estate of Ellie G. Canfield,* 34 T.C. 978 (1960), affd. (C.A. 2, June 25, 1962), and *Commissioner* v. *Ridgway's Estate,* 291 F. 2d 257 (C.A. 3, 1961), affirming 33 T.C. 1000 (1960). However, in neither of these cases did the trust at any time from its creation contain a right or power in the grantor to recover the trust corpus. Since the instant case involves the taxability to the grantor of trust income and is thus concerned with provisions of the income tax law, neither the cases dealing with gift tax, nor those dealing with estate tax, are controlling.

It is not helpful to examine the law of California as to the validity of revocable trusts. While State law governs in construing the interests created by trusts when a Federal taxing statute requires such construction for its application, it is not controlling in interpreting the meaning of the words used in the Federal taxing statutes with respect to the taxability of the trust income. *M. T. Straight Trust,* 24 T.C. 69 (1955), affd. 245 F. 2d 327 (C.A. 8, 1957). In construing the provisions of section 673(a) of the Internal Revenue Code of 1954, consideration must be given to the provisions of section 676(b),[6] making inapplicable to a trust which is revocable by the grantor the provision of section 676(a) treating the grantor as the owner of such trust, if the time when such revocation might be made commences after the expiration of a period such that the grantor would not be treated as the

---

[6] SEC. 676(b). POWER AFFECTING BENEFICIAL ENJOYMENT ONLY AFTER EXPIRATION OF 10-YEAR PERIOD.—Subsection (a) shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that a grantor would not be treated as the owner under section 673 if the power were a reversionary interest. But the grantor may be treated as the owner after the expiration of such period unless the power is relinquished.

owner under section 673 if the power were a reversionary interest. Construing section 673 (a) and section 676 (a) of the Internal Revenue Code of 1954 in the light of the provisions of section 676 (b) we feel the proper interpretation of these sections is that unless a trust of the type here involved is irrevocable for a period of over 10 years, the income from the trust is taxable to the grantor.[7] The trusts here involved were at no time irrevocable for a period of over 10 years, and, therefore, under the provisions of the Internal Revenue Code of 1954 the income from these trusts is taxable to the grantors.

Petitioners argue, relying upon *M. T. Straight Trust, supra,* and *Sinopoulo* v. *Jones,* 154 F. 2d 648 (C.A. 10, 1946), that the trusts here involved were irrevocable for a term of over 10 years. Petitioners state that these cases hold the general rule to be that as between parties to an instrument, a reformation relates back to the date of the instrument, but as to third parties who have an acquired right under the instrument, the reformation is only from the date thereof. Petitioners conclude from this that since the trusts here involved were amended or reformed to make them expressly irrevocable on July 30, 1954, and have at all times been for terms exceeding 10 years that they were irrevocable trusts for terms of over 10 years during the calendar years 1954, 1955, and 1956. Petitioners then argue that since the Government had no right to income taxes for the calendar years 1954, 1955, and 1956, prior to the time these trusts were made irrevocable that under the language in *Sinopoulo* v. *Jones, supra,* and *M. T. Straight Trust, supra,* the income is not taxable to petitioners in the years here in issue. Both *M. T. Straight Trust, supra,* and *Sinopoulo* v. *Jones, supra,* involved reformation of a trust by a State court. Reformation of the trusts here involved by the California court was not until 1961 after the last taxable year here involved. The amendments to the trusts made by the parties merely added a provision to the trust declaration providing that the trusts were irrevocable. Although it was stated in the amendment that the parties had always intended the trusts to be irrevocable, this was no reformation of the trusts but merely an amendment.

The joint trust, for its fiscal year December 1, 1953, to December 1, 1954, is subject to the provisions of the Internal Revenue Code of 1939. The income of this trust prior to July 30, 1954, is taxable to the grantors under the provisions of section 166 of the Internal Revenue

---

[7] The provisions of section 673 (d), I.R.C. 1954, further support this view. Sec. 673 (d) provides:

(d) POSTPONEMENT OF DATE SPECIFIED FOR REACQUISITION.—Any postponement of the date specified for the reacquisition of possession or enjoyment of the reversionary interest shall be treated as a new transfer in trust commencing with the date on which the postponement is effected and terminating with the date prescribed by the postponement. However, income for any period shall not be included in the income of the grantor by reason of the preceding sentence if such income would not be so includible in the absence of such postponement.

Code of 1939 in view of our holding that the amendments of July 30, 1954, were not retroactive for income tax purposes, and, therefore, the trust was a revocable one until July 30, 1954. Respondent argues that under the provisions of section 22(a) of the Internal Revenue Code of 1939 and section 39.22(a)–21(c), Regs. 118,[8] the income of the joint trust for the period after July 30, 1954, is taxable to petitioners. These provisions would apply with respect to the taxability of the income of the joint trust to petitioners for the period from July 30, 1954, to December 1, 1954.

Petitioners argue that the provisions of Regulations 118, relied upon by respondent, are invalid, relying upon *Commissioner* v. *Clark*, 202 F. 2d 94 (C.A. 7, 1953), affirming 17 T.C. 1357 (1952), in which the circuit court held the provisions of section 29.22(c)–21, Regs. 111, which are substantially the same as the provisions of section 39.22(a)–21(c), Regs. 118, to be invalid as applied to a trust created prior to the adoption thereof. The instant case is distinguishable from *Commissioner* v. *Clark*, *supra*, in that the regulation here involved was in existence at the time of the creation of the joint trust. Furthermore, under the criteria considered to be proper of application in *Commissioner* v. *Clark*, *supra*, and *Helvering* v. *Clifford*, 309 U.S. 331 (1940), and the facts as set forth in our findings, we consider the income of this trust for the period July 30, 1954, to December 1, 1954, to be taxable to petitioners.

*Decision will be entered under Rule 50.*

---

[8] SEC. 39.22(a)–21(c), Regs. 118.  *Reversionary interest after a relatively short term.* (1) Income of a trust is taxable to the grantor where the grantor has a reversionary interest in the corpus or the income therefrom which will or may reasonably be expected to take effect in possession or enjoyment:

(i) Within 10 years commencing with the date of the transfer, or